PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.                                    No. 00-4767

WILEY GENE WILSON,
    *Defendant-Appellee.*

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                                    No. 00-4807

WILEY GENE WILSON,
    *Defendant-Appellant.*

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-00-70-H, CR-00-79-H)

Argued: May 10, 2001

Decided: August 16, 2001

Before NIEMEYER and GREGORY, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Senior Judge Alarcon joined.

**COUNSEL**

**ARGUED:** Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellant. Christopher G. Browning, Jr., HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellant. Carolyn A. Dubay, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

On the motion of Wiley Gene Wilson, the district court dismissed an indictment charging him with escape on the ground that the prosecution was motivated by vindictiveness. The court found that the U.S. Attorney for the Eastern District of North Carolina prosecuted Wilson on the request of the U.S. Attorney for the District of South Carolina solely in furtherance of personal animus against Wilson based on Wilson's successful appeal of an unrelated conviction obtained by the South Carolina U.S. Attorney. The court denied Wilson's motion to dismiss for lack of venue.

Because Wilson failed to satisfy the rigorous standard for overcoming the presumption of prosecutorial regularity, we reverse, reinstate the indictment, and remand for further proceedings. We affirm the district court's venue ruling.

I

In April 1997, Wiley Gene Wilson was arrested in Pageland, South Carolina, for possessing a firearm while being a felon, in violation of 18 U.S.C. § 922(g). At the time of his arrest, Wilson was in violation of the parole conditions of a 1983 conviction for kidnapping as a result of charges that had been filed against him in a Nevada state court for attempted theft. Based on this parole violation, Wilson was incarcerated at the federal prison in Butner, North Carolina, and began serving the remaining seven-plus years of his sentence for the

kidnapping conviction. When Wilson was convicted on the firearm-possession charge, he was given a 210 month term of imprisonment to be served at Butner consecutive to the kidnapping sentence.

Shortly after Wilson's conviction for possessing a firearm, the Federal Bureau of Prisons transferred Wilson from Butner to Nevada under the Interstate Agreement on Detainers Act for the limited purpose of permitting him to respond to the state theft charges pending against him there. Prior to his transfer, Wilson signed an agreement in which he acknowledged that he was being temporarily transferred to state custody; that he was aware that state officials were not to release him into the community; that he would not receive credit for his federal sentence for any period of time he was in the community following an erroneous release by state officials; and that he would call the Bureau of Prisons immediately should he be released or transferred to anywhere other than to federal custody.

In December 1998, a month after Wilson was transferred from Butner to Nevada, the Nevada charges were resolved with the imposition of a sentence for time served. Instead of returning Wilson to the Bureau of Prisons, Nevada authorities released him into the community because of a mix-up in paperwork resulting from Nevada's prosecution of Wilson under an alias. Instead of notifying Nevada authorities of the mix-up or calling the Federal Bureau of Prisons, as he had agreed to do, Wilson fled to El Monte, California. He was found a few weeks later at his sister's home and was returned to Butner in January 1999 to serve the remainder of his sentences for the 1983 kidnapping conviction and for the 1998 firearm-possession conviction.

Upon Wilson's reincarceration, Deputy U.S. Marshal John Hardy of the Eastern District of North Carolina promptly opened a file in which he recommended that Wilson be prosecuted for escape. Hardy was, however, unsure in which district venue was proper for the alleged offense. After consulting an Assistant U.S. Attorney in the Eastern District of North Carolina, who advised him that venue lay in the District of Nevada, Deputy Marshal Hardy forwarded his report to the U.S. Attorney's Office in the District of Nevada. Wilson was never prosecuted in Nevada, however, because authorities in Nevada did not agree that venue was appropriate there.

During the same period and parallel to Hardy's efforts, Assistant U.S. Attorney William Day and Deputy U.S. Marshal James Batey, both of whom were from the District of South Carolina and had been involved with Wilson's firearm-possession prosecution, inquired about the status of a prosecution of Wilson for escape. Even after Batey was told that the prosecution had been transferred to the District of Nevada, he continued to direct inquiries about its status to North Carolina. Eventually Batey prepared a memorandum, dated January 25, 2000, describing the facts of escape and requesting that the matter be considered for prosecution in North Carolina. He sent the memorandum to Deputy Marshal Tex Lindsey in the Eastern District of North Carolina. The memorandum noted that Wilson had "threatened the original sentencing judge [in the firearm-possession case] and had filed numerous actions against jailers and U.S.M.S. personnel." As Batey later explained, the threat had been reported to the marshals and the judge by one of Wilson's fellow inmates.

In March 2000, a month and a half after Batey's memorandum was first sent, and more than a year after Wilson was returned to Butner, his conviction for firearm possession was vacated on appeal because the firearm was obtained pursuant to an unconstitutional automobile stop. *See United States v. Wilson*, 205 F.3d 720, 724 (4th Cir. 2000) (en banc). The day after the opinion was released, efforts to have Wilson prosecuted for escape were stepped up when Deputy Marshal Batey's January 25 memorandum was faxed to the U.S. Attorney in South Carolina. On March 14, 2000, a few days after receiving the memorandum, the U.S. Attorney for the District of South Carolina sent an e-mail message to the U.S. Attorney for the Eastern District of North Carolina, requesting that Wilson be prosecuted for escape.[1]

---

[1]The e-mail reads:

I am writing to request that your district consider the prosecution of Wiley Gene Wilson for his escape from FCI Butner, NC custody in December of 1998. Actually, Mr. Wilson escaped while he was in Nevada on a writ for disposition of state charges there — he was in federal custody pursuant to this district's (South Carolina) prosecution of him for firearm offenses. I understand it is your district that can prosecute this escape since he was to return to Butner upon disposition of the Nevada matters.

This memorandum contained a handwritten notation that an indict-
ment would have to be obtained soon because Wilson's release from
Butner might be "imminent."[2] Based on this request and after a pro-
secutorial memorandum was prepared, the U.S. Attorney for the East-
ern District of North Carolina obtained an indictment against Wilson
on April 18, 2000, charging him with escape. After the factual basis
for the charge was further investigated, a superseding indictment
making corrections was obtained and filed on May 17, 2000.

Wilson filed a motion to dismiss the indictment charging him with
escape on the ground that it was brought vindictively and selectively
to punish him for successfully invoking his appeal rights in the
firearm-possession case. He also contended that venue did not lie in
the Eastern District of North Carolina.

In his motion to dismiss, based on "vindictive and selective prose-
cution," a motion which commenced a procedural thicket, Wilson
requested that the indictment be dismissed or, alternatively, that he be
afforded discovery on his claim. The motion relied on (1) Wilson's
successful appeal of his firearm-possession conviction; (2) the timing

---

Deputy U.S. Marshal Jim Batey of the Florence office has previ-
ously corresponded regarding this matter with Deputy U.S. Mar-
shal Tex Lindsey of your district (back in January of this year).
The Marshal's office was particularly interested in having Mr.
Wilson prosecuted because of his threats against the sentencing
Judge and other aggravating factors.

The matter recently came to my attention because Mr. Wilson's
conviction by this district was vacated by the Fourth Circuit
(2000 WL 253604 March 7th en banc). This district seeks Mr.
Wilson's escape prosecution, not because of the Fourth Circuit's
decision, but because we consider Mr. Wilson dangerous —
thus, the DUSM made his request long before the recent appel-
late court decision.

If you are interested, you could have someone contact AUSA
Bill Day (843/667-3982) of this district or DUSM Jim Batey
(843/662-0750) for more details; or feel free to call me.

[2]In fact, it appears that Wilson becomes eligible for parole on his kid-
napping sentence in November 2001.

of the escape prosecution, which commenced immediately after Wilson's success in the firearm-possession case; and (3) the alleged "manufacture" of an escape charge, based on the negligence of Nevada authorities, more than a year after Wilson was reincarcerated. On these facts, Wilson requested that the district court "presume vindictiveness" by the prosecutor in the Eastern District of North Carolina or, alternatively, order discovery. In its response, the government provided factual support for the charging decision, which included both the Batey memorandum of January 25, 2000, authored before the Fourth Circuit's ruling in the firearm-possession case, and the South Carolina U.S. Attorney's e-mail memorandum of March 14, 2000, to the U.S. Attorney in the Eastern District of North Carolina, authored after the Fourth Circuit's ruling in the firearm-possession case.

The district court rejected Wilson's venue challenge, but, because Deputy Marshal Batey's January 25 memorandum had been faxed to the U.S. Attorney for South Carolina immediately on the heels of Wilson's successful appeal and because the memorandum exaggerated Wilson's alleged threat against the sentencing judge, the court concluded that Wilson had shown enough to justify requiring the government to respond to discovery on Wilson's vindictiveness claim. The court stated, "the evidence presented does not raise a procedural presumption that the prosecutors acted selectively or vindictively. However, the court [does] find that the existing evidence [is] sufficient to warrant a full and adequate discovery period." The government objected to the court's ruling and sought a protective order based on 5 U.S.C. § 301 and 28 C.F.R. § 16.21 *et seq.*, which regulate the disclosure of such prosecutorial information. Pending a ruling on its motion, the government refused to comply with subpoenas or turn over requested documents. Without resolving this discovery dispute, the district court held an evidentiary hearing on the vindictiveness claim on August 14, 2000.

After Wilson argued the significance of the two memoranda that the government had attached to its initial response to the motion to dismiss, as well as the timing of the indictment charging escape, the district court found that Wilson had made a "prima facie showing of an unusual prosecution." The court explained:

She [counsel for Wilson] has correctly stated that she doesn't have a lot of evidence but the documents that she

has been given, the memorandum from [South Carolina U.S. Attorney] J. Rene Josey and the memorandum from [Deputy Marshal] James [Batey], if you consider the dates and you consider that this was an escape that allegedly occurred a year plus and then all of a sudden three or four or five or six days after the 4th Circuit's decision comes down, appears to me, Mr. Renfer, there was quite a bit of activity and I would conclude that that's enough to at least make an initial showing.

After the government presented testimony, the court concluded that Wilson had proved, by clear and convincing evidence, that "the prosecution of Wiley Wilson was vindictive." The court stated:

I base my decision heavily on government's Exhibit No. 2, the memorand[um] [of March 14, 2000] between United States Attorney Josey and United States Attorney Cole of the Eastern District of North Carolina.

I further base my decision on the testimony of Deputy United States Marshal [Batey], who testified that he pursued Wilson's prosecution solely because of [South Carolina] Assistant United States Attorney Day's request. I find that Day's activity was concurrent in time with the appeal before the 4th Circuit for the underlying prosecution.

It is clear that Deputy United States Marshal [Batey] found the defendant "very aggravating" and wanted him prosecuted. The court discounts the memo's reference to the defendant's threats on a U.S. Judge in that the government's witness, Deputy U.S. Marshal [Batey], testified that the judge and the Federal Public Defender, who was also mentioned, were not concerned about these threats.

The court also considers the indictment of the defendant coming one plus years after the escape and some few days after the vacation by the 4th Circuit of the underlying conviction to weigh toward the overall evidence supporting vindictiveness.

> I find there was a vindictive animus by Department of Justice persons.

Accordingly, the court dismissed the indictment.

The government filed a motion for reconsideration, arguing (1) that the district court never ruled on the discovery dispute over the government's request for a protective order and (2) that the court never imposed the burden on Wilson of establishing facts to justify a presumption of vindictiveness before authorizing discovery and shifting the burden of production to the government. The government then waived the regulation of its prosecutorial decisionmaking and provided the court with further details of the decision to indict Wilson for escape. The prosecutors in the Eastern District of North Carolina stated that they reviewed the file independently to ascertain whether they could prove the elements of an escape, noting the office's well-established policy to "prosecute all escapes from our district if we can prove the elements of the crime." They also noted their preparation of a "prosecution memorandum" on March 30, 2000, outlining the facts, evidence, legal and evidentiary issues, witnesses, and penalties. In addition, the government provided affidavits showing that Wilson had a long criminal record, perpetrated through at least 17 aliases, and that the prosecutors in the District of South Carolina had concluded that Wilson was a "career criminal who is a danger to the community." South Carolina Assistant U.S. Attorney Day stated that he had long believed that Wilson should be prosecuted for the escape and had begun his efforts to this end over a year before the Fourth Circuit vacated the firearm-possession conviction. And when the Fourth Circuit vacated the firearm-possession conviction, he, together with Deputy Marshal Batey, visited the U.S. Attorney for South Carolina to recommend the commencement of an escape prosecution in North Carolina because of their belief that Wilson's release would pose a threat to the community.

The district court considered the new evidence introduced by the government but denied its motion for reconsideration. The court noted that "the government does not provide the independent reasons necessary to thwart the presumption of vindictiveness raised by the defendant." Moreover, on the question of whether Wilson actually proved vindictiveness, the court found:

First, it is clear from the record that it had been well over a year between the time defendant was erroneously released and the time that a decision was made to prosecute this case. During that year no one had shown any interest in prosecuting this case.

\*     \*     \*

Second, based on evidence presented at the evidentiary hearing, the court does not find the alleged threat to Judge Currie to have been serious or even tenable. Having examined the vast record in this matter, the court cannot find credible evidence that suggests that the defendant poses a serious danger to the community.

Finally, the defendant has provided substantial evidence that the U.S. Attorney in South Carolina prevailed upon the U.S. Attorney in this district to bring the current charges against him. When the memorandum from Deputy Marshal James Batey, which was faxed to the U.S. Attorney's office in South Carolina on March 8, 2000, the day after defendant won his appeal, was not sufficient to spur the U.S. Attorney for the Eastern District of North Carolina to prosecute, the sitting U.S. Attorney in South Carolina *personally* requested the sitting U.S. Attorney in this district to prosecute.

The court also found that "'but for' defendant's successful appeal and the personal request of the U.S. Attorney in South Carolina, the government would not have prosecuted this matter."

The government filed this appeal challenging the district court's conclusion, as a matter of law, that Wilson provided enough evidence to require discovery on his vindictive prosecution claim or to establish a presumption of vindictiveness, as well as the court's factual finding of an actual vindictive motivation in seeking the indictment charging Wilson with escape. Wilson cross-appealed, challenging venue in the Eastern District of North Carolina.

## II

Wilson's motion to dismiss based on prosecutorial vindictiveness asserted that his prosecution in North Carolina for escape, undertaken

only after his successful appeal in the firearm-possession case in South Carolina, was pursued to punish him for his success in having the firearm-possession conviction vacated. He contended below that the U.S. Attorney in North Carolina acted on the request of the U.S. Attorney in South Carolina who had a personal interest in punishing Wilson for his successful appeal and that the North Carolina prosecution was therefore motivated by actual vindictiveness. Wilson maintained that his prosecution for escape was not a "legitimate response" to the escape which occurred over a year earlier. The district court agreed and dismissed the indictment.

The government contends on appeal that the district court clearly erred in finding as fact that the prosecutors in the Eastern District of North Carolina held a vindictive animus against Wilson in prosecuting him or that they failed to act independently of the U.S. Attorney for the District of South Carolina in making the charging decision. It also contends that the district court erred as a matter of law by applying a presumption of vindictiveness because the prosecution of Wilson for escape was independent of the firearm-possession conviction obtained by the District of South Carolina and later vacated.

In addressing the complicated jurisprudence of a prosecutorial vindictiveness claim, we must thus determine both (1) whether the finding that Wilson's prosecution for escape was *actually* motivated by prosecutorial vindictiveness is supported by the evidence and (2) whether, as a legal matter, the district court correctly relied on a presumption of vindictiveness in the circumstances presented to it.

A

It is now well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982); *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969). Thus, if a prosecutor responds to a defendant's successful exercise of his right to appeal by bringing a more serious charge against him, he acts unconstitutionally. *See Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974). Such retaliatory conduct amounts to vindictive prosecution and is unconstitutional.

Indeed, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the [United States] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citations omitted).

To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus. *See Goodwin*, 457 U.S. at 380 n.12 (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).

If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed. To invoke such a presumption, a defendant must show that the circumstances "pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27. By recognizing the possibility of creating a presumption that shifts the burden to the government to justify its conduct, not only is vindictive prosecution deterred, but also defendants are "freed of [the] apprehension of such a retaliatory motivation." *Goodwin*, 457 U.S. at 376. But such a presumption is warranted only when circumstances warrant it for all cases of the type presented. *See id.* at 381. Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions. *See id.* Because of the broad discretion given prosecutors and the wide range of factors that may properly be considered in making pretrial prosecutorial decisions, "a prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* at 382. "Thus, a change in the charging decision made *after* an initial trial is completed is much more likely to be improperly motivated than a pretrial decision." *Id.* at 381 (emphasis added). When a presumption of vindictiveness is warranted, the burden shifts to the gov-

ernment to present objective evidence justifying its conduct. *See id.* at 374, 376 n.8.

Although prosecutorial decisions must not be made in retaliation against defendants for exercising their legal rights, courts must nonetheless be cautious not to intrude unduly in the broad discretion given to prosecutors in making charging decisions. Indeed, a prosecutor's charging decision is presumptively lawful. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). As the *Armstrong* Court noted:

> A selective-prosecution claim asks a court to exercise judicial power over a "special province" of the Executive. The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal law. . . . As a result, [t]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Id.* (internal quotation marks and citations omitted). The same may be said of vindictive prosecution claims.

Because of this necessary presumption of prosecutorial regularity, a presumption of vindictive prosecution, or any other type of selective prosecution, must be supported by a showing sufficiently strong to overcome the presumption of prosecutorial regularity. Indeed, even before a court allows a defendant to have discovery on the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct. The standard is a "rigorous" one. *Id.* at 468. As we summarized the standard more fully in *United States v. Olvis*:

> Just as the standard for ultimately proving a selective prosecution claim is a rigorous one, so too is the evidentiary threshold for obtaining discovery from the government to

support such a claim. A significant barrier to discovery is necessary because discovery "imposes many of the costs present when the government must respond to a prima facie case of selective prosecution"; it diverts governmental resources and discloses prosecutorial strategies.

97 F.3d 739, 743 (4th Cir. 1996) (quoting *Armstrong*, 517 U.S. at 464); *see also Sanders*, 211 F.3d at 717 (holding that the standard for ordering discovery on a vindictive prosecution claim is the same as that for ordering discovery on a selective prosecution claim).

We review the district court's orders for discovery and establishing a presumption of vindictive prosecution *de novo* because we are determining the legal adequacy of the evidence to support such orders. *See Olvis*, 97 F.3d at 743.

B

We address first whether Wilson satisfied his burden of proving that the decision by the U.S. Attorney in the Eastern District of North Carolina to prosecute Wilson for escape was motivated by *actual* vindictiveness — in this case by reason of the personal interest of the U.S. Attorney in South Carolina to punish Wilson for appealing his firearm-possession conviction and having it vacated. To establish actual vindictiveness, Wilson must prove not only that the prosecutor charging him with escape harbored vindictive animus but also that he pursued the escape prosecution *solely* to punish Wilson for his success in the South Carolina case. *See Goodwin*, 457 U.S. at 380 n.12. Indeed, Wilson must carry the heavy burden of proving that the escape prosecution "could not be justified as a proper exercise of prosecutorial discretion." *Id*.

We come to this question by first recognizing the undisputed facts that buttress the presumption of "regularity" in the escape prosecution. *See Armstrong*, 517 U.S. at 464. First, in this case the government had evidence that Wilson failed to report to the Federal Bureau of Prisons upon his release by Nevada authorities and that he did so knowingly because he signed an agreement that clearly described his responsibilities. Second, a grand jury found that the evidence supported a finding of probable cause that Wilson violated 18 U.S.C.

§ 751 (punishing escape). Third, the facts giving rise to the escape prosecution were unrelated to the facts giving rise to the firearm-possession case and therefore merited at least one initial review for prosecution. Fourth, the prosecutor in the firearm-possession case was different from the prosecutor who had jurisdiction over the escape prosecution. Fifth, efforts to initiate the escape prosecution began immediately after the escape and long before the firearm-possession conviction was vacated, and no decision was ever made not to prosecute the escape charge. And finally, the U.S. Attorney for the Eastern District of North Carolina had a policy of prosecuting all escapes.

Wilson's theory of demonstrating actual vindictive animus relies on an ability to prove that the South Carolina U.S. Attorney held a vindictive animus based on Wilson's successful appeal of his firearm-possession conviction and that this animus was somehow transferred to the U.S. Attorney for the Eastern District of North Carolina through the March 14 e-mail. But Wilson has presented no evidence to support this theory. The only communication in the record between the South Carolina U.S. Attorney and the North Carolina U.S. Attorney is the March 14 e-mail in which Wilson's prosecution for escape is "requested." In support of the request, the South Carolina U.S. Attorney summarized the facts of escape and expressed the opinion that Wilson's release from prison would pose a danger to the community. There is nothing in the e-mail, or elsewhere in the record, to suggest that the U.S. Attorney in North Carolina was required to act on the request or felt any compunction to act for any reason other than the duty to prosecute cases in the public interest. As it turned out, a deputy marshal in the Eastern District of North Carolina had already opened a file shortly after the escape, revealing that district's preexisting interest in the prosecution. Moreover, the U.S. Attorney for the Eastern District of North Carolina had a policy of prosecuting all escapes. The delay in prosecuting Wilson's escape was attributed to confusion with the District of Nevada over venue. Finally, when the U.S. Attorney in North Carolina received the e-mail request from the South Carolina U.S. Attorney, the matter was assigned to an Assistant U.S. Attorney in North Carolina who prepared a prosecution memorandum noting reasons that justified the prosecution. There is no evidence that the North Carolina U.S. Attorney or her assistants acted with any purpose of punishing Wilson's victory in the firearm-possession case or of vindicating any personal interest of the U.S.

Attorney in South Carolina to punish Wilson for exercising his right to appeal the South Carolina conviction.

Wilson's theory on proving causation — that his prosecution for escape was undertaken *solely* because of vindictiveness — is even more lacking of evidentiary support. He argues that because (1) the escape prosecution followed on the heels of his success in the firearm-possession case and (2) the prosecution for escape had not progressed to an indictment for over a year after the escape, it must follow that the escape prosecution was motivated solely because of Wilson's success in the firearm-possession case. Again, this argument is belied by the record. After the case had been transferred to Nevada by the deputy marshals in North Carolina, the person who persisted in returning the prosecution to North Carolina was Deputy Marshal Batey from the District of South Carolina. But the beginning of his efforts to prosecute Wilson in North Carolina *preceded* Wilson's success in the appeal of his firearm-possession case. While the evidence supports the conclusion that the escape prosecution was accelerated following the Fourth Circuit's decision in the firearm-possession case, that haste was attributable to the prosecutors' interest in not having Wilson returned to the street in view of his perceived dangerousness. But such a motivation is in furtherance of the public interest, not in vindication of the personal interests of the prosecutor to punish Wilson for succeeding on his appeal.

In the face of strong probable cause that Wilson committed the crime of escape, judicial intervention should not deny the community the benefit of a prosecution unless Wilson can show that he would not have been prosecuted for escape *but for* the vindictive motive of prosecutors to punish him for successfully exercising his right of appeal in the firearm-possession case. Wilson has not carried this heavy burden. We therefore conclude that the district court clearly erred in finding otherwise.

C

Even though Wilson is unable to demonstrate *actual* vindictiveness, he still could succeed on his claim of vindictive prosecution by demonstrating that the circumstances of the case support a presumption of vindictiveness and thereby shift to the government the burden

of justifying its conduct. To invoke this presumption, Wilson must point to circumstances surrounding the initiation of the prosecution and show that they "pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27. When the circumstances pose such a likelihood, a presumption may be warranted even if the defendant has no direct evidence of an actual retaliatory motive. *See United States v. Williams*, 47 F.3d 658, 660 (4th Cir. 1995). But the circumstances in this case must be sufficiently suggestive of vindictive prosecution that when similar circumstances are presented in other factual contexts, the same conclusion would be suggested. *See Goodwin*, 457 U.S. at 381. Moreover, the circumstances must be evaluated against the background presumption that charging decisions of prosecutors are made in the exercise of broad discretion and are presumed to be regular and proper. *See Armstrong*, 517 U.S. at 464.

In this case, the district court concluded that the presumption was warranted, relying principally on (1) the proximity in time of the escape prosecution to Wilson's success in the firearm-possession appeal, (2) the apparent lack of interest in prosecuting Wilson for escape for over a year, and (3) the communication between the U.S. Attorneys in South Carolina and North Carolina. After finding that "the government does not provide the independent reasons necessary to thwart the presumption of vindictiveness raised by the defendant," the court concluded that the escape prosecution was motivated by vindictiveness.

The government challenges the district court's conclusion that a presumption applied in the circumstances of this case, contending that "[t]he district court committed legal error by applying a presumption of vindictiveness to the United States" when "the escape prosecution was initiated by the [Eastern District of North Carolina], which had no stake in the firearm conviction obtained in the [District of South Carolina]" and when "the escape offense prosecuted in the [Eastern District of North Carolina] was entirely independent of the firearm offense prosecuted in the [District of South Carolina]." Wilson, on the other hand, contends that the district court correctly applied a presumption of vindictiveness, because the "prosecution . . ., initiated days after his successful appeal and over a year after his erroneous release, is not a 'legitimate response' to the errors of law enforcement personnel in Nevada who mistakenly released Wilson."

At bottom, the circumstances on which Wilson relies to invoke the presumption of vindictiveness relate to the timing of the indictment for escape, filed within days of his successful appeal of an unrelated firearm-possession conviction, and the knowledge of the escape held by prosecutors for over a year prior to the successful appeal. But also relevant is the fact that Wilson's successful appeal resulted in his conviction being vacated, rather than merely remanded for a new trial, such that he was certain to be released from prison much sooner than if his conviction had been affirmed or sent back for retrial.

The Supreme Court has noted that each of the decisions in which it has recognized a presumption of vindictiveness reflects the Court's awareness "of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided." *Goodwin*, 457 U.S. at 376. In declining to impose a presumption of vindictiveness to a prosecutor's pretrial decision to add charges to an indictment after a defendant failed to plead guilty to the original charges as anticipated, the Court noted the absence of "the institutional bias against the retrial of a decided question," which undergirds each of the decisions in which it has deemed a presumption of vindictiveness to be appropriate. *Id.* at 383. The Court concluded that this bias against the redetermination of a previously decided factual question "simply has no counterpart in [a] case" where the prosecutor has made a decision adverse to the defendant in the process of preparing for trial. *Id.* Also relevant to the Court's determination that a presumption was unwarranted was the fact that the "prosecutor ha[d] no 'personal stake' . . . and thus no reason to engage in 'self-vindication.'" *Id.*

Because both of these prerequisites to the creation of a presumption of vindictiveness — that the escape charge had once been prosecuted and that the prosecutor of the escape charge had a personal stake in self-vindication — are similarly absent from the charging decision made in this case, we conclude that the circumstances do not warrant a generally applicable presumption of vindictiveness based on the decision to charge Wilson with escape following his successful appeal of his firearm-possession conviction. Unlike the typical presumption case, where a defendant's successful appeal necessitates a retrial on the same charge, Wilson's successful suppression of the weapon on his appeal means he cannot be retried on that charge. Thus, any "institutional bias against the retrial of a decided question" is by definition

absent from this prosecution, which involves *only* an entirely new charge with a new set of facts to be adjudged. Although our determination of whether a presumption is warranted involves only the legal question of whether the situation involved "pose[s] a realistic likelihood of 'vindictiveness,'" *Blackledge*, 417 U.S. at 27, we think that in the situation where the charging decision was made at a time when a defendant's success on appeal would mean that he would be released from prison within a shorter time, it is at least as likely that the decision was based on the fear that the defendant would pose a threat to public safety. Because that possibility is at least as likely, or even more likely, Wilson is not able to carry his burden of showing that the prosecutor's desire to punish him for having successfully exercised his appellate rights was the likely reason for the timing.

Moreover, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision" because "the prosecutor's assessment of the proper extent of prosecution may not have crystallized" until after a pretrial investigation of a case is fully completed. *Goodwin*, 457 U.S. at 381. Because the facts giving rise to the escape charge occurred after the conviction on the firearm-possession charge, this case bears a strong similarity to *Goodwin*, where the decision to add additional charges to an indictment was made before trial but after the defendant failed to plead as expected. Moreover, like *Goodwin*, the facts surrounding the charging decision are different from those in the typical case in which a presumption of vindictiveness arises. Typically, in that type of case, at the time the prosecutor initially tried the defendant the decision was made not to try the defendant on an additional available charge later brought only after the defendant's successful appeal. In that situation, unlike in *Goodwin* or here, an inference may be drawn that the prosecutor's decisionmaking was influenced by the only material fact different the second time around — the defendant's successful appeal of his original conviction. Here, there is no "record" to suggest that the prosecutor of the firearm-possession charge deemed the escape charge unworthy of prosecution at the time he prosecuted the firearm-possession charge because the facts of the escape had not yet occurred. As was the *Goodwin* Court, we are loathe to invade the zone of prosecutorial discretion without a demonstration of circumstances that clearly justify the presumption of a vindictive motive.

Finally, but not the least important is the fact that the prosecutor charged with vindictiveness in this case was different — indeed, she is in a different office — from the prosecutor who brought the charge that Wilson successfully appealed. Even if a presumption of vindictiveness could have attached on these facts to a charging decision made by the U.S. Attorney for the District of South Carolina, we could not, on this record, impute the improper motivation to the U.S. Attorney for the Eastern District of North Carolina. *Cf. United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) (declining to impute the animus of a referring investigative agency to the government official who made the decision to prosecute). We especially reject any contention that such an imputation would be warranted when the circumstances fail to suggest that the North Carolina U.S. Attorney was aware that the referring office might have been motivated by a vindictive animus when it requested that Wilson be indicted for escape. To the contrary, the e-mail sent from the South Carolina U.S. Attorney indicated a concern that the defendant might soon be on the street and would thus pose a danger to the community. We see no reason to assume that this legitimate prosecutorial motive was not taken at face value. Even if we were to assume that any motive could have been "transferred" by an e-mail request, we could only assume that the motive "transferred" was the one expressed, rather than an improper motive, not evidenced by the e-mail. Moreover, the fact that there was no connection between the South Carolina case successfully appealed by Wilson and the North Carolina escape prosecution can only lead to the conclusion that the attorneys in the North Carolina office had "no 'personal stake' [in Wilson's successful appeal] . . . and thus no reason to engage in 'self-vindication.'" *Goodwin*, 457 U.S. at 383.

In sum, we conclude, as a matter of law, that the circumstances presented in this case do not give rise to a presumption that the escape charge was prosecuted in North Carolina solely to punish Wilson for successfully appealing an unrelated conviction obtained by prosecutors from South Carolina. Because of our ruling on the merits, we do not reach the government's challenge to the district court's ruling ordering discovery.

### III

On his cross-appeal, Wilson challenges venue in the Eastern District of North Carolina. He argues that he escaped in Nevada while in

custody of Nevada authorities and therefore the *locus delicti* was Nevada. He concludes therefore that under the constitutional mandate of Article III, Section 2, he could be tried only in Nevada.

The government has the burden of establishing, by a preponderance of the evidence, that venue is proper. *See United States v. Blecker*, 657 F.2d 629, 632 (4th Cir. 1981). And we review the district court's determination of venue *de novo*.

Venue lies in the State and in the district where the offense was "committed." U.S. Const. art. III, § 2, cl. 3; Fed. R. Crim. P. 18. A determination of where an offense is "committed" must be made by reference to the criminal act proscribed by the statute. *See Johnston v. United States*, 351 U.S. 215, 220 (1956). If the statute does not explicitly provide guidance, the location of the offense for venue purposes "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703 (1946). The focus, however, is on the place, not on the person, and the defendant need not have been present in the district where the crime was committed. *See Travis v. United States*, 364 U.S. 631, 634 (1961).

In this case, Wilson was charged with escape under 18 U.S.C. § 751(a), which provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .

Because this statute does not explicitly fix the district in which an offense occurs, we consider the nature of the crime and the location of the act (or failure to act) constituting it. Wilson argues that the act

constituting the crime was his failure, upon release from Nevada authorities, to place a telephone call to the Federal Bureau of Prisons, an omission which occurred in the District of Nevada.

This argument, however, fails to account for the total circumstances of Wilson's escape. At the time Wilson was "released" by Nevada authorities, he was a prisoner in the constructive custody of the Federal Bureau of Prisons at Butner, North Carolina. Wilson was only in Nevada under the terms of the Interstate Agreement on Detainers Act, and by those terms, he remained in the legal custody of Butner when he was sent to Nevada on detainer, except with respect to the charge for which temporary custody was assumed by Nevada. *See* 18 U.S.C. app. 2 § 2, art. V(g) (explaining that a transferred prisoner is "deemed to remain in the custody of and subject to the jurisdiction of the sending State"). Thus, although Wilson was physically in the State of Nevada at the time of his escape, he was legally incarcerated in North Carolina, and after release by Nevada authorities when Wilson failed to notify federal officials of his release, as he was obligated to do, he escaped from the constructive custody of federal authorities in the Eastern District of North Carolina. *See id.*; *cf. United States v. Overaker*, 766 F.2d 1326, 1327 (9th Cir. 1985) (holding that venue was proper in an escape prosecution in the State where a defendant had failed to report because the defendant "was in the constructive custody of the [State's] authorities as soon as he was ordered to report to them").

Accordingly, Wilson's "escape[ ] . . . from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General," 18 U.S.C. § 751(a), as alleged in the indictment, was from an institution located in the Eastern District of North Carolina. We therefore affirm the district court's conclusion that venue properly lies in that district.

IV

In sum, we affirm the district court's ruling that venue for Wilson's prosecution for escape properly lies in the Eastern District of North Carolina. We reverse the court's ruling dismissing the indictment on the finding that the prosecution was motivated by prosecutorial vin-

dictiveness and the conclusion that the circumstances gave rise to a presumption of vindictiveness. We reinstate the indictment and remand for further proceedings.

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*