**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 12-4081**

―――――――――

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

    v.

CHRISTOPHER BELL,

             Defendant - Appellant.

―――――――――

Appeal from the United States District Court for the District of South Carolina, at Aiken.  Margaret B. Seymour, Chief District Judge.  (1:08-cr-00730-MBS-3)

―――――――――

Argued: February 1, 2013              Decided: April 26, 2013

―――――――――

Before NIEMEYER, DUNCAN, and DIAZ, Circuit Judges.

―――――――――

Affirmed by unpublished opinion.  Judge Niemeyer wrote the opinion, in which Judge Duncan and Judge Diaz joined.

―――――――――

**ARGUED:** Russell Warren Mace, III, THE MACE FIRM, Myrtle Beach, South Carolina, for Appellant.  John David Rowell, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Jeffrey Mikell Johnson, Robert F. Daley, Jr., Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

A jury convicted Christopher Bell on one count of conspiracy to possess with intent to distribute 5 kilograms of cocaine and 280 grams of cocaine base and on three counts of possession with intent to distribute a quantity of cocaine. The district court sentenced him to 380 months' imprisonment. On appeal, Bell contends (1) that the superseding indictment on which he was convicted improperly increased the alleged drug amounts, in retaliation for his successful appeal, allowing him to withdraw an earlier guilty plea entered on the original indictment; (2) that the district court erred in denying his Batson claim; (3) that the district court erred in failing to suppress statements that he made pursuant to an allegedly involuntary Miranda waiver; and (4) that, in sentencing him, the district court erred in finding that he was a career offender and in applying various other sentencing enhancements. We find Bell's arguments unpersuasive and affirm.

I

Bell contends first that the superseding indictment on which he was convicted should have been dismissed for prosecutorial vindictiveness. He claims that the prosecutor acted with "actual animus" or, alternatively, that the

2

circumstances gave rise to a "presumption of prosecutorial vindictiveness."

The original indictment charged Bell in the first of four counts with conspiracy to distribute 50 grams or more of cocaine base. Bell pleaded guilty to this conspiracy count, and the district court sentenced him to 380 months' imprisonment. After Bell appealed his conviction, contending that his plea hearing did not comply with Rule 11, the government agreed to a withdrawal of his guilty plea and a remand.

After remand, the grand jury returned a superseding indictment containing the same four counts alleged in the original indictment. The superseding indictment, however, increased the drug quantities alleged to be involved in the conspiracy count from 50 grams or more of cocaine base to 5 kilograms or more of cocaine and 280 grams or more of cocaine base. It also added allegations of "aiding and abetting" to the three distribution counts. Bell claimed that these changes were made in retaliation for his successful appeal, and he filed a motion to dismiss the indictment. The district court denied the motion, and Bell proceeded to trial. A jury convicted Bell on all counts, and the district court again sentenced him to 380 months' imprisonment.

Bell argues now that these circumstances reveal either actionable animus against him or at least give rise to a

3

presumption of prosecutorial vindictiveness. The government explains that it did not obtain the superseding indictment in retaliation for Bell's successful appeal, but rather to equalize the threshold drug amounts in the superseding indictment with those alleged in the original indictment in light of the newly enacted Fair Sentencing Act, which took effect August 3, 2010. It also points out that on the appeal, it consented to a remand.

We have noted that if a prosecutor "responds to a defendant's successful exercise of his right to appeal by bringing a more serious charge against him, he acts unconstitutionally." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001). To demonstrate actual vindictiveness, a defendant must show that the government harbored "vindictive animus" and that the superseding indictment was brought "solely to punish" him. Id. at 316 (emphasis in original). A defendant may gain the benefit of a presumption of vindictiveness by pointing "to circumstances surrounding the initiation of the prosecution and show that they 'pose a realistic likelihood of vindictiveness.'" Id. at 317 (quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)).

Although Bell provides no evidence of actual vindictiveness, he claims that the surrounding circumstances give him the benefit of a presumption, relying on: (1) the timing of the superseding indictment following a successful

4

appeal; (2) the increased drug quantities alleged in the amended conspiracy count; and (3) the addition of the aiding and abetting allegations in the counts charging actual distribution.

We conclude that the district court did not err in denying Bell's motion to dismiss based on prosecutorial vindictiveness. While the indictment was indeed filed after Bell successfully challenged his plea hearing, the government recognized the error and consented to the remand. Moreover, the allegations increasing the drug amounts comport exactly with new threshold amounts stated in the Fair Sentencing Act. The Fair Sentencing Act ("FSA") altered the threshold quantity of cocaine base necessary to trigger the mandatory sentencing minimums in 21 U.S.C. § 841(b). Just as the initial indictment alleged the necessary threshold amounts under pre-FSA law -- 50 grams or more of cocaine base, see 21 U.S.C. § 841(b) (2006) -- the superseding indictment alleged the threshold amounts in the FSA -- 5 kilograms or more of cocaine and 280 grams or more of cocaine base, see 21 U.S.C. § 841(b) (2012). We conclude that the district court did not err in finding that the superseding indictment was brought not because of Bell's successful appeal but because of a change in the law.

Also, the addition of the aiding and abetting allegations to the distribution counts did not add additional charges against Bell. See United States v. Johnson, 537 F.2d 1170 (4th

5

Cir. 1976). Rather, the allegations simply provided a structure that facilitated the government's ability to prove the previously alleged counts against Bell. We conclude that these changes were not "sufficiently suggestive of vindictive prosecution." Wilson, 262 F.3d at 317.

II

Bell next contends that the government violated Batson v. Kentucky, 476 U.S. 79 (1986), in exercising its seven peremptory juror strikes against African Americans. When the government made the strikes, Bell made a Batson motion, asking the government "to state any [race] neutral reasons for those strikes." When the court directed the request to the government, the government responded in detail, giving several reasons for each strike. The court then found that "the government ha[d] articulated race neutral reasons for the strike[s]" and therefore denied the motion. Bell contends that the district court erred in not comparing the government's proffered reasons for the strikes to similarly situated jurors who had not been the subject of a preemptory strike, citing Miller-El v. Dretke, 545 U.S. 231 (2005), and United States v. Barnette, 644 F.3d 192 (4th Cir. 2011).

Bell's argument, however, fails to recognize that he was required, as a condition of requesting a comparative-juror

6

analysis, to identify comparative jurors for the district court. See Barnette, 644 F.3d at 205 (requiring a comparative juror analysis where "the struck black potential jurors bore strong similarities as well as some differences to nonblack jurors who were permitted to serve") (construing Miller-El, 545 U.S. at 247). Here, Bell failed to identify a single nonstruck juror that would call into doubt the reasons proffered by the government.

Bell also contends that the government's exercise of all of its seven preemptory challenges against African-Americans "created an inference of purposeful discrimination," shifting the burden to the government to demonstrate that its reasons were not a pretext. Regardless of whether the government's conduct actually gave rise to such an inference, the court nonetheless did call on the government to provide explanations for each strike. And, with respect to each strike, the government gave race-neutral explanations, which included past convictions, lack of education, association with witnesses, demeanor, and adverse responses on juror questionnaires. The district court found the government's explanations credible and race-neutral, and, based on this record, we cannot find that the district court clearly erred.

Bell also contends that the district court erred in denying his motion to suppress a statement that he made to Special Agent Matthew E. Morlan of the ATF during an interview on July 25, 2008. At the hearing on Bell's suppression motion, Special Agent Morlan testified that before he conducted the interview, he read a Miranda form to Bell line-by-line and that Bell signed the waiver voluntarily. After waiving his Miranda rights and indicating that he wanted to speak with officers, Bell provided a rundown of his narcotics dealings. Morlan testified that Bell spoke lucidly and did not appear to be under the influence of alcohol or drugs.

Bell, however, gave a different account, suggesting that his Miranda waiver was not voluntary because he had used cocaine, pills, and alcohol on the day of the interview. Bell testified first that Special Agent Morlan "just slid [him] the paper and said, 'sign it,' and . . . walked off." On cross-examination, however, Bell asserted that he did not remember having the interview or signing the form because he had been under the influence of alcohol and drugs.

After the hearing, the district court found the government's witnesses credible and, on that basis, denied Bell's motion to suppress. We have reviewed the record

carefully and cannot conclude that the district court clearly erred in its factual finding.

IV

Finally, Bell contends that during sentencing, the district court improperly applied four enhancements authorized by the Sentencing Guidelines. Based on our review of the record, we find each of Bell's arguments unpersuasive.

First, Bell contends that the district court should not have designated him a career offender under U.S.S.G. § 4B1.1 because the sentences for the predicate offenses were not shown to have been imposed within ten years of the "commencement of the instant offense," as required by U.S.S.G. § 4A1.2(e)(2). The predicate offenses were Bell's conviction on January 16, 1997, for distributing crack cocaine near a public park, and his conviction on August 6, 1998, for possession with intent to distribute crack cocaine near a school. The record shows that the cocaine-distribution conspiracy alleged in this case commenced well within the ten-year window following the predicate offenses. Bell's coconspirators in this case testified to dealing drugs with Bell since 2005, and Bell's own statements admitted to buying cocaine as far back as 1999. The district court thus did not clearly err in finding that the

9

conspiracy in this case began before the ten-year window closed on the predicate offenses.

Bell also argues that the district court erred in applying an enhancement for his leadership role in the conspiracy, under U.S.S.G. § 3B1.1(b). He insists that his companions were involved in nothing but a conspiracy of "users." The evidence, however, showed that Bell actively managed multiple members of the conspiracy in the sale of both cocaine and cocaine base. Even though the district court did not explicitly address each of the stated Guidelines' factors to be considered in applying the enhancement, we readily discern from the court's comments that it evaluated Bell's role within the conspiracy in light of those factors.

Bell next challenges the application of an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1, based on a telephone call he made to a prospective witness. As Bell and his attorney were preparing for jury selection, the government provided a list of its witnesses to Bell and his attorney, which included the name of Tonya Kneece. Several hours later, Special Agent Morlan received a voicemail from Kneece, who was very upset and crying. Kneece informed Special Agent Morlan that Bell had called her on the telephone to say he was very angry at her. Bell told Kneece that he had seen her name on the witness list and that he "knew everything." He told her that he thought they

10

were friends and then abruptly hung up. Kneece told Special Agent Morlan that she was concerned for her safety. Bell argues that these facts reveal "no threat by [him] to influence Kneece and therefore, no intent to obstruct justice." The enhancement, however, does not require the showing of an actual threat. Intimidation or unlawful influence suffices. See U.S.S.G. § 3C1.1, Application Note 4(A). There can be little doubt that Kneece was intimidated by the call, as she told Special Agent Morlan that she was afraid for her safety because of it. We conclude that this evidence was sufficient to justify the district court's finding of intimidation.

Finally, Bell challenges the parole-violation enhancement under U.S.S.G. § 4A1.1(d), arguing that his term of parole fixed by any earlier sentence had expired before this conspiracy in this case had begun. This argument, however, is not supported by the record. On August 6, 1998, Bell was convicted of possession with intent to distribute crack cocaine near a school. He was released on parole on September 9, 2001, which expired on June 8, 2005. This termination date of parole came after Bell had resumed trafficking in cocaine and cocaine base in 2004 and 2005. Accordingly, we conclude that the district court did not err in applying this enhancement.

In sum, the judgment of the district court is

AFFIRMED.

11