**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4573**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

TERENCE WATSON,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Louise W. Flanagan,
District Judge.  (5:11-cr-00330-FL-1)

Submitted:  June 12, 2013             Decided:  August 6, 2013

Before AGEE, FLOYD, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

David L. Neal, Hillsborough, North Carolina, for Appellant.
Thomas G. Walker, United States Attorney, Jennifer P. May-
Parker, Assistant United States Attorney, Kristine L. Fritz,
Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal jury convicted Appellant Terence Watson of conspiracy to distribute and possession with intent to distribute 280 or more grams of cocaine base. The district court sentenced Watson to 222 months' imprisonment. On appeal, Watson alleges that there was insufficient evidence to support his conviction. He also argues that his due process rights were violated when the government superseded the original indictment to add the above mentioned drug conspiracy charge. For the reasons explained below, we affirm his conviction.

I.

Watson was indicted on October 25, 2011, for being a felon in possession of a firearm on or about July 24, 2009, in violation of 18 U.S.C. § 922(g)(1). Watson was arrested on November 9, 2011. At his detention hearing, the magistrate judge found that the evidence against Watson was "strong," as it included testimony of confidential informants, telephone conversations preceding the purchase of the firearm, and recordings at the time of the transaction. The magistrate judge also inquired as to why the government took over two years to indict Watson. The government argued that the delay was necessary because Watson's actions were part of a larger investigation. On January 9, 2012, Watson pleaded not guilty to

2

the charge. After conferring with the parties, the court set trial for April 6, 2012.

On March 28, 2012, the grand jury returned a superseding indictment charging Watson with conspiracy to distribute and possession with intent to distribute 280 or more grams of cocaine base in violation of 21 U.S.C. § 846. The grand jury also charged Watson with being a felon in possession of a firearm, as charged in the original indictment. The court called a pretrial hearing on April 5, 2012. At this hearing, the court expressed "its dismay at the manner in which this case was promoted for trial by the government." Instead of seeking a continuance, however, Watson indicated that it was his preference to commence with trial as planned. The government explained that up until February 29, 2012, it did not possess enough information to indict Watson on conspiracy charges. However, on this date it received correspondence from a cooperating defendant offering to provide information about Watson. The government then gave notice to Watson's counsel that it anticipated receiving new information about Watson's involvement in dealing crack cocaine. The government states that prior to filing a superseding indictment it gave Watson the option of pleading guilty to the firearms charge. Apparently plea negotiations failed. Watson then moved to dismiss the superseding indictment, arguing that it violated his due process

3

rights because of the timing of its issuance. He also argued that the indictment constituted vindictive prosecution because it was filed in response to his decision to plead not guilty and proceed to trial. The court denied the motion.

Watson then pleaded not guilty to the superseding indictment and trial commenced on April 6, 2012. At trial the government presented evidence from cooperating witnesses Tony Blanchard, Deon Boston, and Lawrence Sharpe; testimony from a confidential informant, Priscilla Hudson; and testimony from several law enforcement officers. The confidential informant testified as to her dealings with Watson, as well as with others involved in dealing crack cocaine. She confirmed that she purchased from Blanchard marijuana and cocaine in several controlled buys. She then contacted Blanchard about purchasing a firearm. Hudson identified, through a recording, Watson as the supplier of the firearm. Blanchard confirmed this fact as well. Blanchard was subsequently arrested. During his interviews, Blanchard explained that he and Boston regularly dealt drugs together. Boston was his most regular supplier, but he confessed to buying one to two grams of crack cocaine from Watson a few times a month in 2008 and 2009.

Boston also testified at trial pursuant to his plea agreement. Boston testified that he observed Watson sell to Blanchard about five to ten times. He also admitted that he and

Watson sold cocaine from the same vehicle two or three times each month and that they would borrow ounces of crack cocaine from each other depending upon supply. He went on to explain that he was familiar with Watson's hiding places for his drug stash.

Sharpe testified at trial pursuant to a plea agreement. Sharpe's primary occupation was selling drugs along with his partner, Shonte Fleming, and his main supplier was Boston. However, after Boston's arrest, Sharpe turned to Watson as his supplier. He testified to seeing Boston and Watson together at Boston's residence. And, he testified that he purchased at least one ounce at least two to three times a week from Watson, which he could then split into smaller quantities and resell to about fifteen to twenty people.

Based on the above testimony, the government sought to establish a conspiracy. The government sought to establish ongoing relationships between Watson and Boston, Boston and Sharpe, and Sharpe and Fleming. The government explained that Boston and Watson were working together to continue to supply cocaine to the same customers. At the close of the government's evidence, Watson made a Rule 29 motion for acquittal. He renewed this motion at the close of trial, arguing vindictive prosecution as a due process violation. The district court denied all motions. The jury then found Watson guilty of the

5

drug conspiracy charge and not guilty of possession of a firearm. The district court then sentenced Watson to 222 months' imprisonment. Watson timely appealed, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742(a).

## II.

This Court reviews de novo a district court's denial of a motion for judgment of acquittal. United States v. Osborne, 514 F.3d 377, 385 (4th Cir. 2008). This Court must affirm the verdict "if there is substantial evidence, taking the view most favorable to the government." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). To prove a conviction for a drug conspiracy the government must show: "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy." United States v. Kellam, 568 F.3d 125, 139 (4th Cir. 2009) (quoting United States v. Strickland, 245 F.3d 368, 384-85 (4th Cir. 2001)).

6

The government presented sufficient evidence of a conspiracy here. The evidence showed that Watson and Boston agreed to sell crack cocaine together, including when they sold crack cocaine together out of a car. As this Court has noted, "the proof of an agreement 'need not be direct'-it may be inferred from circumstantial evidence." Kellam, 568 F.3d at 139 (quoting United States v. Ellis, 121 F.3d 908, 922 (4th Cir. 1997)). A defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy" can all be used to show the existence of and participation in a conspiracy. United States v. Brown, 856 F.2d 710, 711 (4th Cir. 1988) (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)). Watson and Boston also borrowed drugs from each other to supply the demands of consumers. There was evidence that Boston knew where Watson kept his supply and that they both conducted business in each other's presence. Their customers were also aware that Watson could meet their demands when Boston could not. Furthermore, Watson had regular dealings with Blanchard to sell him one to two ounces as needed and to sell to Sharpe several times a week. The duration and frequency of the interactions and drug sales all showed that a conspiracy existed. These agreements "made in addition to or beyond the bare buy-sell transaction may be taken to infer a joint

7

enterprise . . . and thereby support finding of conspiracy." United States v. Edmonds, 679 F.3d 169, 174 (4th Cir. 2012). Here there is ample evidence that Watson, Boston, and others agreed to distribute drugs within a certain area and that they facilitated each other's efforts to that end. In sum, there is sufficient evidence to support Watson's conviction for distribution and possession with the intent to distribute crack cocaine.

### III.

This Court reviews de novo a district court's ruling on a vindictive prosecution motion. United States v. Wilson, 262 F.3d 305, 316 (4th Cir. 2001). Watson contends that his due process rights were violated by the "sloppy manner in which the government sought harsher punishment based on slight evidence a week before trial in order to intimidate [him] into giving up his right to a jury trial." The burden is on Watson to prove either actual vindictiveness or "circumstances that support a presumption of vindictiveness and thereby shift to the government the burden of justifying its conduct." Id. at 317. Watson argues that the proceedings show a presumption of vindictiveness. We are unconvinced.

The Supreme Court has held that vindictiveness cannot be shown by a prosecutor's decision to seek additional charges

8

against a defendant who decides to plead not guilty. Bordenkircher v. Hayes, 434 U.S. 357, 364-65 (1978). The Court suggested that there were limits on the prosecutor's discretion. For example, the decision could not be based on "race or religion." Id. at 364. However, a "course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." Id. at 365. Watson's reliance on Lafler v. Cooper, 132 S. Ct. 1376 (2012), and Missouri v. Frye, 132 S. Ct. 1399 (2012), is misplaced. Lafler and Frye addressed the Sixth Amendment right to effective counsel and recognized the necessity of that right during the negotiation and plea process. These cases, quite frankly, have nothing to do with the prosecutor's conduct or discretion to bring charges as he or she chooses.

In this case, there was nothing wrong with the prosecutor's decision to seek harsher charges should Watson choose not to plead guilty. As the Supreme Court has decided, "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'-and permissible-'attribute of any

9

legitimate system which tolerates and encourages the negotiation of pleas.'" <u>Bordenkircher</u>, 434 U.S. at 364 (quoting <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17, 31 (1973)).  Thus, Watson has failed to show any vindictiveness of the part of the prosecution, and his claim fails.

## IV.

Finding no error, this case is


<u>AFFIRMED.</u>