## -THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Anthony Clark Odom, Appellant.

Appellate Case No. 2012-206186

Appeal from Oconee County
R. Lawton McIntosh, Circuit Court Judge

Opinion No. 27517
Heard May 21, 2014 – Filed April 22, 2015

### AFFIRMED

Brian D. McDaniel, of Beaufort, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General William M. Blitch, Jr., both of
Columbia, for Respondent.

**JUSTICE KITTREDGE:**  Anthony Clark Odom (Appellant) appeals his
conviction for criminal solicitation of a minor.  We affirm.

### I.

Appellant's conviction for criminal solicitation of a minor[1] followed a series of
internet chat sessions with an undercover Westminster, South Carolina, city police

---

[1] *See* S.C. Code Ann. § 16-15-342 (Supp. 2013) (defining the crime of criminal
solicitation of a minor and requiring that the defendant be "eighteen years of age or
older).

officer[2] posing as a fourteen-year-old girl.  The internet exchanges occurred from May 4–6, 2006, in Oconee County, South Carolina.  A jury found Appellant guilty of one count of criminal solicitation of a minor, based on the internet chats that occurred from May 4–5, 2006.  Appellant was acquitted of the count involving a chat room conversation that allegedly occurred on May 6, 2006.  The trial court sentenced Appellant to seven years' imprisonment, suspended upon the service of five years' probation, along with conditions including registering as a sex offender.  Appellant appealed his conviction, and the Court certified the case from the court of appeals pursuant to Rule 204(b), SCACR.

## II.

"In criminal cases, the appellate court sits to review errors of law only."  *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).  Therefore, this Court is bound by the trial court's factual findings unless the appellant can demonstrate that the trial court's conclusions either lack evidentiary support or are controlled by an error of law.  *State v. Laney*, 367 S.C. 639, 644, 627 S.E.2d 726, 729 (2006).

## A.

Appellant argues that the officer posing as a fourteen-year-old girl must have a bond to be acting in his official capacity and therefore the trial court erred in refusing to instruct the jury on the law of bonding.[3]  We find no error.

First, there is no evidence that the undercover officer, Officer Patterson, was not bonded.  Moreover, Officer Patterson was a municipal police officer with the Westminster City Police Department.  State law does not mandate a bond requirement for full-time sworn (non-reserve) municipal police officers.  *Compare* S.C. Code Ann. § 5-7-110 (Supp. 2013) (containing no bond requirement for municipal police officers), *with* § 23-7-30 (Supp. 2013) (requiring special state constables to file a bond before discharging his or her duties), *and* § 23-13-20

---

[2] The case was prosecuted by the Attorney General's (AG) Office because the officer was participating in the AG's Internet Crimes Against Children (ICAC) Task Force.

[3] *See* S.C. Code Ann. § 16-15-342(D) ("It is not a defense to a prosecution pursuant to this section, on the basis of consent or otherwise, that the person reasonably believed to be under the age of eighteen is a law enforcement agent or officer *acting in an official capacity*." (emphasis added)).

(Supp. 2013) (requiring county deputy sheriffs to file a bond before discharging his or her duties), *and* § 23-27-70 (Supp. 2013) (requiring deputy sheriffs of unincorporated areas to provide a bond before discharging his or her duties), *and* § 23-28-20 (requiring reserve police officers to provide a bond before discharging his or her duties). Therefore, had the trial judge instructed the jury on a bonding requirement, it would have been an erroneous instruction. We affirm on this issue.

### B.

Appellant next assigns error to the trial court's refusal to dismiss the indictments due to vindictive prosecution. We find no error.

Initially, the State sought to indict Appellant for his conversations with an undercover officer in Spartanburg County.[4] It was not the State's original intent to indict Appellant for his conversations with Officer Patterson in Oconee County that are the subject of this appeal. Rather, the AG's strategy was to try Appellant in Spartanburg County on other similar charges, and use the evidence gathered in the Oconee investigation as "prior bad acts" evidence[5] in the Spartanburg trial.

Appellant was indicted in Spartanburg County on June 22, 2006. During pre-trial motions, the court suppressed all of the evidence obtained by the ICAC Task Force pursuant to 18 U.S.C. §§ 2703(d) (stating requirements for court orders to procure stored electronic communications) and 3127(2)(B) (2006) (permitting state criminal courts to "enter orders authorizing the use of a pen register or a trap and trace device").[6] The State appealed this ruling, and on March 30, 2009, this Court

---

[4] Appellant was indicted in Spartanburg County on one count of criminal solicitation of a minor for engaging in seventeen separate conversations in an online chat room with an undercover agent posing as a thirteen-year-old girl. These conversations allegedly occurred from March 12–May 4, 2006. The Spartanburg trial resulted in a mistrial because of a hung jury on March 2, 2010.

[5] *See* Rule 404(b), SCRE (stating that "[e]vidence of other crimes, wrongs, or acts" may "be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent"); *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923) (explaining the permissible uses of evidence of prior bad acts).

[6] The bulk of the electronic evidence implicating Appellant in the Oconee charges was obtained using these orders during the Spartanburg investigation.

reversed. *See State v. Odom*, 382 S.C. 144, 676 S.E.2d 124 (2009).[7] The State planned to proceed with the Spartanburg trial in August 2009.[8]

In June 2009, Officer Patterson, lead investigator in the Oconee County case, was dismissed from the police department. Officer Patterson was arrested in connection with a dispute with his ex-wife, a charge that was ultimately dismissed. Because the State planned to use evidence from the Oconee investigation in the Spartanburg trial, Appellant's defense counsel in that trial, James Huff, attempted to subpoena Patterson's personnel records, including his arrest records.

Before the Spartanburg trial began, the State notified Appellant that it planned to seek separate indictments in Oconee County. The Spartanburg trial began on February 22, 2010, and resulted in a mistrial due to a hung jury on March 2, 2010.

On April 12, 2010, a grand jury true billed the indictments in Oconee County. Appellant asserted that the State chose to prosecute him on the Oconee County charges in retaliation for counsel Huff's attempts to obtain the Patterson records in the Spartanburg trial.

The trial court held a pre-trial hearing on Appellant's vindictive prosecution motion. At the hearing, Huff stated that on February 16, 2010, he spoke to lead prosecutor Megan Wines on the telephone regarding the Patterson arrest records, during which Wines told Huff that she had instructed Patterson's criminal defense attorney to refuse to relinquish the records to Huff because she did not believe that Huff had the authority to subpoena the information. Wines also indicated that she was frustrated by Huff's pursuit of these records.

Huff further stated that he again discussed the matter of the records with Wines two days later. Huff stated that Wines again indicated that she was unhappy with him for pursuing the Patterson arrest records because she felt they were irrelevant

---

[7] While the Spartanburg case was under appellate review, the ICAC Task Force underwent a change in leadership, and Megan Wines replaced David Stumbo as lead prosecutor. We make note of this in view of the trial court's reference to the change in leadership. As the trial court found, there was no evidence of misconduct against either lead prosecutor.

[8] The trial did not actually start on this date because Appellant obtained a continuance after he hired new trial counsel.

to the Spartanburg charges.  Huff related that, as a consequence of his pursuit of the records, Wines told him, "Fine. We'll just indict [Appellant] in Oconee."  Thus, Huff believed that the AG belatedly chose to indict Appellant in Oconee because Huff subpoenaed Patterson's records in the Spartanburg trial.  According to Huff, from the time of Appellant's arrest until the second conversation with Wines, he received no indication from the AG's office that the AG planned to prosecute Appellant in Oconee County.

In contrast, Wines stated that she initially thought to use the Oconee charges as *Lyle* evidence in the Spartanburg trial in furtherance of the trial strategy devised by her predecessor, Solicitor Stumbo.  However, prior to the call of the case in Spartanburg, she changed her mind because she felt that using the charges in such a way was complicating matters in the Spartanburg trial, and that Patterson's arrest was "too collateral an issue" to deal with in the Spartanburg case.  She was also worried that the subpoena issue would further delay the start of the Spartanburg trial, which had already been delayed numerous times, including for the appeal of the pre-trial evidentiary ruling.  Therefore, Wines claimed she decided to pursue indictments in Oconee County, where Patterson led the investigation, and where his arrest records would be more directly relevant.  She further testified that another change in strategy was to seek separate indictments for each conversation due to the mistrial in Spartanburg where a single indictment for all of the conversations resulted in confusion for the jury.

While Wines admitted that she was irritated with Huff for serving subpoenas that she did not believe he had the authority to pursue, Wines testified that her decision to seek the indictments in Oconee County ultimately came down to a change in trial strategy:

> And I was frustrated that the matter had come to Judge Hayes ordering that we would have a hearing on attorney/client privilege with regard to Mark Patterson's records which were not instrumental to the Spartanburg trial . . . .  There was gonna [sic] be potential *Lyle* evidence, and I don't know that we would have ever gotten it in.

> So it made sense to me at that point that I believe separate crimes had been committed, it made sense to change trial strategy and to go ahead and have those sent to the Oconee County Grand Jury, which was done in May.

The trial court denied Appellant's motion, stating:

I don't find that there was established any actual malice or evidence that would rise to an implied malice or vindictiveness. I think under the circumstances the explanation given by the State was reasonable, and given the wide discretion given to prosecutors, the evidence doesn't amount to the level that would give rise to the draconian remedy of dismissing the warrants.

"It is a due process violation to punish a person for exercising a protected statutory or constitutional right." *State v. Fletcher*, 322 S.C. 256, 259–60, 471 S.E.2d 702, 704 (Ct. App. 1996) (citing *United States v. Goodwin,* 457 U.S. 368, 372 (1982)); *see also United States v. Wilson,* 262 F.3d 305, 314 (4th Cir. 2001) (stating if a prosecutor "responds to a defendant's successful exercise of his right to appeal by bringing a more serious charge against him, he acts unconstitutionally"); *United States v. Lanoue*, 137 F.3d 656, 664–65 (1st Cir. 1998) (stating that such retaliatory conduct amounts to vindictive prosecution and "violates a defendant's Fifth Amendment right to due process"). On a claim of vindictive prosecution, courts generally "review the [trial court's] legal conclusions *de novo* and its findings of fact for clear error." *United States v. Jarrett*, 447 F.3d 520, 524 (7th Cir. 2006) (citing *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003)). "A claim of prosecutorial vindictiveness turns on the facts of each case." *People v. Hall*, 726 N.E.2d 213, 220 (Ill. App. Ct. 2000).

Courts will "reverse a conviction that is the result of a vindictive prosecution where the facts show an actual vindictiveness or a sufficient likelihood of vindictiveness to warrant . . . a presumption [of vindictiveness]." *Barrett v. Virginia*, 585 S.E.2d 355, 365 (Va. Ct. App. 2003) (citations omitted), *aff'd*, 597 S.E.2d 104 (Va. 2004).

"To demonstrate actual vindictiveness, a defendant must show that the government harbored 'vindictive animus' and that the superseding indictment was brought '*solely* to punish' him." *United States v. Bell*, 523 F. App'x 956, 959 (4th Cir. 2013) (quoting *Wilson*, 262 F.3d at 316). In other words, to prove a claim of actual vindictiveness, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314 (citations omitted); *see also United States v. Sanders*, 211 F.3d 711, 716–17 (2d Cir. 2000) ("To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's charging decision or the resultant indictments were a direct and unjustifiable penalty, that resulted solely from the defendant's exercise of a protected legal right." (internal citations and quotation marks omitted)).

Accordingly, while the prosecutor's charging decision is presumptively lawful, and the prosecutor is not required to sustain any burden of justification for an increase in charges, the defendant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjustifiable penalty for the exercise of a procedural right. Of course, only in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration.

*Goodwin*, 457 U.S. at 384 n.19 (internal quotation marks omitted).

Likewise, a presumption of vindictiveness may arise if a criminal defendant establishes that "circumstances surrounding the initiation of the prosecution . . . 'pose[d] a realistic likelihood of vindictiveness.'" *Wilson*, 262 F.3d at 317 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). "If the defendant creates a presumption of vindictiveness the burden shifts to the government to show that legitimate reasons exist for the prosecution." *Barrett*, 585 S.E.2d at 365 (citations omitted). When determining if a presumption of vindictiveness is warranted,

the appropriate inquiry is whether . . . for example, where, after the defendant's prior exercise of a procedural or substantive legal right, or his having succeeded in reversing a conviction on appeal, the prosecution acts arguably to punish the exercise of such rights, by increasing the measure of jeopardy by bringing additional or more severe charges, or where the judge assesses a larger penalty upon subsequent conviction for the same offense following an earlier reversal.

*United States v. Ward*, 757 F.2d 616, 619–20 (5th Cir. 1985).

Despite the prosecutor's candid omission that she was irritated with Huff, we find Appellant has fallen far short of presenting evidence tending to show that vindictiveness played any role in the decision to prosecute the Oconee County charges. We join the able trial judge in rejecting the claim of vindictiveness under these circumstances. In so holding, we note that a defendant asserting prosecutorial misconduct carries a "heavy burden of proving that the . . . prosecution 'could not be justified as a proper exercise of prosecutorial discretion.'" *Wilson*, 262 F.3d at 316 (quoting *Goodwin*, 457 U.S. at 380 n.12); *see State v. Dawkins*, 297 S.C. 386, 389, 377 S.E.2d 298, 300 (1989) ("[A]n initial decision by

the prosecutor should not freeze future conduct, because the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution."); *see also Goodwin*, 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."); *United States v. Esposito,* 968 F.2d 300, 306 (3d Cir. 1992) ("We will not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy.  Such a presumption is tantamount to making an acquittal a waiver of criminal liability for conduct that arose from the operative facts of the first prosecution.  It fashions a new constitutional rule that requires prosecutors to bring all possible charges in an indictment or forever hold their peace . . . .  We reject such a proposition for it undermines lawful exercise of discretion as well as plain practicality."); *cf. State v. Langford*, 400 S.C. 421, 435 n.6, 735 S.E.2d 471, 479 n.6 (2012) (stating a prosecutor "has discretion in choosing how to proceed with a case, including whether to prosecute in the first place and whether he brings it to trial or offers a plea bargain.").

## C.

Appellant argues that the trial court erred by taking judicial notice of an element of the offense, Appellant's age.  We agree but find the error harmless.

The State requested the trial court take judicial notice under Rule 201(b), SCRE, of Appellant's date of birth based on certified copies of records from the Department of Motor Vehicles (DMV).  Further, the State asserted that because the document was a certified record of the DMV, the trial judge did not have discretion to "question it."  The trial court accepted the State's argument and ruled that it would take judicial notice of Appellant's date of birth, June 22, 1973, based on section 19-5-30 (concerning certification of governmental records), Rule 901(7), SCRE (concerning authentication of records), and also Rule 201(b)(2) and (g), SCRE (concerning judicial notice).

Thereafter, the trial judge instructed the jury:

> [L]adies and gentlemen of the jury, I have taken judicial notice of a fact.  That means that you are not allowed to debate whether or not it's true or accurate.  I charge you that you must find as conclusive the

fact that [Appellant's] date of birth is June 22nd, 1973. That's June 22nd, 1973, and you shall not and you are not allowed to debate that. You must accept that as a conclusive fact.

Appellant contends that the trial court erred in instructing the jury to take judicial notice of Appellant's date of birth because his age was an element of the crime charged. We agree. To withstand a constitutional challenge, Rule 201 cannot be construed as a license to conclusively establish a fact that is an element of the offense charged.

Rule 201, SCRE, governing judicial notice, provides:

**(a) Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

**(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**(c) When Discretionary.** A court may take judicial notice, whether requested or not.

**(d) When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

**(e) Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

**(f) Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

**(g) Instructing Jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

The State correctly points out that "'Courts will take judicial notice of subjects and facts of general knowledge, and also of facts in the field of any particular science which are capable of demonstration by resort to readily accessible sources of indisputable accuracy, and judges may inform themselves as to such facts by reference to standard works on the subject.'" *In re Harry C.*, 280 S.C. 308, 309–10, 313 S.E.2d 287, 288 (1984) (quoting *State v. Newton,* 204 S.E.2d 724, 725 (N.C. Ct. App. 1974)). But the State overlooks the mandatory nature of a judicially noticed fact under our version of Rule 201 juxtaposed to the constitutionally imposed burden that the State prove each element of the offense.

In all criminal prosecutions, "[t]he government must prove beyond a reasonable doubt every element of a charged offense." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citing *In re Winship*, 397 U.S. 358, 364 (1970)); *see Dervin v. State*, 386 S.C. 164, 168, 687 S.E.2d 712, 713 (2009) ("Due process requires the State to prove every element of a criminal offense beyond a reasonable doubt." (citing *State v. Brown*, 360 S.C. 581, 595, 602 S.E.2d 392, 400 (2004))). Here, the jury was instructed to accept as conclusively determined that Appellant was born on June 22, 1973, which established Appellant as eighteen years or older at the time of the offense. The taking of judicial notice of Appellant's date of birth was tantamount to a directed verdict on the element of the accused's age, a practice which is clearly forbidden. *See United Bhd. of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 408 (1947) ("[A] judge may not direct a verdict of guilty no matter how conclusive the evidence.").

The jury was instructed, "you are not allowed to debate whether or not it's true or accurate . . . you shall not and you are not allowed to debate that. You must accept that as a conclusive fact." This was error. The federal courts largely avoid this problem, for Federal Rule of Evidence 201(f) is permissive and states that the jury "may or may not accept the noticed fact as conclusive." Thus, federal courts have typically rejected challenges similar to Appellant's when the jury was properly instructed that it was free to accept or reject the noticed fact. *See, e.g., United States v. Bello*, 194 F.3d 18, 25 (1st Cir. 1999) ("[T]here is widespread agreement that [Federal Rule of Evidence 201(f)], which makes judicial notice non-conclusive in criminal cases, adequately safeguards the criminal defendant's [constitutional rights]."); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (holding that a court does not "usurp the jury's fact-finding role by taking judicial notice" when the jury is instructed that it is not required to accept the noticed fact as conclusive).

Although we hold that the trial court erred in taking judicial notice of Appellant's age in this case, "most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991) (citations omitted). Indeed, the United States Supreme Court "has applied harmless-error review in cases where the jury did not render a 'complete verdict' on every element of the offense." *Neder v. United States*, 527 U.S. 1, 13 (1999). This harmless error standard "serve[s] a very useful purpose insofar as [it] block[s] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22 (1967).

We find the error in this case to be harmless beyond a reasonable doubt in light of the properly admitted evidence that Appellant was eighteen years or older at the time of the underlying offense. Specifically, Appellant repeatedly acknowledged in the Internet chats (with a person he believed to be a minor) that he was over the age of eighteen. In fact, Appellant claimed to be forty years old and emphasized the vast age difference between himself and the purported minor, describing himself as "alot [sic] older" than the minor. This evidence together with the jury's ability to view Appellant's appearance in the courtroom provides a proper basis on which to find the error in this case harmless beyond a reasonable doubt. *See State v. Lauritsen*, 261 N.W.2d 755, 757 (Neb. 1978) ("It is uniformly the rule that a defendant's physical appearance may be considered by the jury in determining his or her age. It has been held, however, that the jury may not fix the age of the defendant by merely observing him during the trial; and that there must be *some other evidence* in conjunction with the appearance of the defendant." (emphasis added) (citations omitted)).

### D.

Appellant finally contends that section 16-15-342 of the South Carolina Code violates his rights to equal protection and free speech and is unconstitutional. We disagree and affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: *State v. Gaster*, 349 S.C. 545, 549–50, 564 S.E.2d 87, 89–90 (2002) ("When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity appears so clearly as to leave no doubt that it conflicts with the constitution."); *see Bodman v. State*, 403 S.C. 60, 69, 742 S.E.2d 363, 367 (2013) ("A classification will survive rational basis review when it bears a reasonable relation to the legislative purpose sought to be achieved, members of the class are treated alike under similar circumstances, and the classification rests on a rational basis." (citation omitted)); *State v. Green*, 397 S.C. 268, 277–78, 724 S.E.2d 664, 668 (2012) (rejecting a First Amendment challenge to section 16-15-342 and

noting that "[c]ourts have recognized that speech used to further the sexual exploitation of children does not enjoy constitutional protection." (quotation omitted)).

## III.

Appellant's conviction and sentence are affirmed.

**AFFIRMED**.

**PLEICONES, BEATTY and HEARN, JJ., concur.  TOAL, C.J., concurring in a separate opinion.**

**CHIEF JUSTICE TOAL:**  While I concur in the result reached by the majority, I write separately because I disagree that the trial judge's decision to take judicial notice of Appellant's birthdate was an error of law.

At trial, the State provided the judge with certified DMV records indicating Appellant's date of birth, but did not formally seek to enter the DMV records into evidence.  The trial judge then instructed the jury:

> [L]adies and gentlemen of the jury, I have taken judicial notice of a fact. That means that you are not allowed to debate whether or not it's true or accurate. I charge you that you must find as conclusive the fact that [Appellant's] date of birth is June 22, 1973. That's June 22, 1973, and you shall not and you are not allowed to debate that. You must accept that as a conclusive fact.

> Rule 201, SCRE, governing judicial notice, provides:

> **(a) Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

> **(b) Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

> **(c) When Discretionary.** A court may take judicial notice, whether requested or not.

> **(d) When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

> **(e) Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

> **(f) Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

**(g) Instructing Jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

"'A trial court may take judicial notice of a fact only if sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof.'" *Bowers v. Bowers,* 349 S.C. 85, 94, 561 S.E.2d 610, 615 (Ct. App. 2002) (quoting *Eadie v. H.A. Sack Co.,* 322 S.C. 164, 171–72, 470 S.E.2d 397, 401 (Ct. App. 1996)); *see also Moss v. Aetna Life Ins. Co.,* 267 S.C. 370, 377, 228 S.E.2d 108, 112 (1976) ("'Judicial notice' takes the place of proof. It simply means that the court will admit into evidence and consider, without proof of the facts, matters of common and general knowledge."). This is because "'courts are not required to be ignorant of a fact which is generally and reliably established merely because evidence of the fact is not offered.'" *In re Harry C.*, 280 S.C. 308, 309–10, 313 S.E.2d 287, 288 (1984) (quoting *State v. Newton,* 204 S.E.2d 724, 725 (N.C. Ct. App. 1974)). Rather, courts "'will take judicial notice of subjects and facts of general knowledge, and also of facts in the field of any particular science which are capable of demonstration by resort to readily accessible sources of indisputable accuracy, and judges may inform themselves as to such facts by reference to standard works on the subject.'" *Id.* (quoting *Newton,* 204 S.E.2d at 725).

The offense of criminal solicitation of a minor occurs where:

A person eighteen years of age or older . . . knowingly contacts or communicates with, or attempts to contact or communicate with, a person who is under the age of eighteen, or a person reasonably believed to be under the age of eighteen, for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity as defined in Section 16-15-375(5) or a violent crime as defined in Section 16-1-60, or with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person reasonably believed to be under the age of eighteen.

S.C. Code Ann. § 16-15-342(A) (Supp. 2013). Thus, the element of the crime related to age is whether the accused is eighteen years of age or older. *See id.*

Because the trial judge took judicial notice of Appellant's date of birth, I disagree with the majority's characterization of the trial judge's action in this case as taking judicial notice of an "element" of the offense. While I concede that the

taking of judicial notice of Appellant's birth date likely resulted in the foregone conclusion that Appellant was over the age of eighteen, the fact that the trial judge did not directly instruct the jury to find Appellant "over the age of eighteen" is a notable, albeit technical, distinction.  As stated previously, a fact properly judicially noticed is any fact "not subject to reasonable dispute in that it is either . . . generally known within the territorial jurisdiction of the trial court or . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Rule 201(b), SCRE.  In my opinion, the DMV records containing Appellant's date of birth fall within this definition.  *Cf. Martin v. Bay*, 400 S.C. 140, 153, 732 S.E.2d 667, 674 (Ct. App. 2012) (finding the Master erred in taking judicial notice of a fact based on his "personal knowledge" because the fact was not "one of common knowledge accepted by the general public without qualification or contention").

Moreover, even though the *result* of the taking of judicial notice of Appellant's birth date is that Appellant's age was almost conclusively established, by providing the jury with Appellant's birth date, the jury still had to take the additional step of applying this fact to establish the *element* of the crime.  In this respect, taking judicial notice of Appellant's date of birth is no different from taking judicial notice of the time of sunset in a burglary case, in which one of the elements of the crime is that the robbery must occur at nighttime.[9]  In either case, the jury is provided with an indisputable fact—Appellant's birthdate, or the time of sunset—which it must then use to determine whether the State has established an element of the crime—whether Appellant was over eighteen when engaging in sexually explicit conversations with a minor, or whether the robbery occurred at night.  These examples illustrate the critical distinction—ignored by the majority—between taking judicial notice of an adjudicative fact, and taking judicial notice of an element of the crime.  In my opinion, the majority's reasoning will lead to unnecessary challenges whenever a judge takes judicial notice, because the fact noticed almost always corroborates an element of the offense.

---

[9] *See, e.g.*, *James v. State*, 546 S.W.2d 306, 310 (Tex. Crim. App. 1977) (recognizing that a court may "take judicial notice of the time the sun rose and set on the day of a burglary for purposes of determining if such burglary was committed in the 'daytime'" (citation omitted)); *cf. Toole v. Salter*, 249 S.C. 354, 362, 154 S.E.2d 434, 437 (1967) (finding that where the relevant statute provided that a parked vehicle must display lights one-half hour after sunset, the trial court committed prejudicial error in failing to take judicial notice of the time of sunset on the day of the collision).

Accordingly, I would affirm the trial judge's decision to take judicial notice of Appellant's date of birth.