**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4340

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRAVIS AARON BALL, a/k/a Wiz,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:19-cr-00128-HEH-1)

Argued: September 24, 2021                    Decided: November 18, 2021

Before NIEMEYER, AGEE, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Quattlebaum joined.

**ARGUED:** Patricia A. Rene, LAW OFFICES OF PATRICIA PALMER NAGEL, PLC, Williamsburg, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Raj Parekh, Acting United States Attorney, Erik S. Siebert, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

During an automobile stop in Richmond, Virginia, Travis Ball engaged in a struggle with a Virginia law enforcement officer, during which he pulled out a gun and shot the officer in the forehead at close range, killing him. Virginia prosecutors charged him with capital murder, and pursuant to a plea agreement, he was sentenced to life imprisonment with all but 36 years suspended.

Shortly after that state sentence was imposed and following community outrage over the inadequacy of the sentence, federal prosecutors charged Ball with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Ball to the statutory maximum of 10 years' imprisonment and, as a variance, required that the 10 years be served consecutive to the state sentence.

Ball contends on appeal that his federal indictment should have been dismissed because that prosecution (1) violated the Double Jeopardy Clause of the Fifth Amendment; (2) was unnecessarily delayed within the meaning of Federal Rule of Criminal Procedure 48(b), having been initiated more than two years after the shooting; and (3) constituted vindictive prosecution under the Due Process Clause of the Fifth Amendment because the federal prosecution and sentence were — in Ball's view — intended to punish him for negotiating a favorable deal with state prosecutors. He also challenges his federal sentence.

We affirm.

2

# I

On May 26, 2017, Virginia State Police Special Agent Michael Walter and Richmond Police Officer Christopher Duane investigated a car parked in the Mosby Court public housing community in Richmond with two men sitting inside. Mosby Court was a high-crime location that officers regularly patrolled. When the officers learned that the two men were not residents of the community, they sought to determine whether they were trespassers and asked them to step out of the vehicle. Ball refused to do so, and during the ensuing struggle with Special Agent Walter, Ball pulled out a gun, "level[ed] [it] down" to Special Agent Walter's head, and shot him "directly in the center of his forehead" at close range, killing him. It was later revealed during Ball's federal sentencing hearing that, in a text message from Ball to his girlfriend the day before the shooting, Ball reacted to information from his brother that there was an outstanding warrant for his arrest in Lancaster County, Virginia, for a felony probation violation. He texted, "Cause i dont have time for the bullshit n plus my brother just told me I'm wanted in Lancaster county now for a felony violation that shit is just too fucking much mane . . . I'm end up killing something." He also texted, "I'm just gone be on the run cause im not going back n i don't want to be there with all them fucking police every where I turn." It was also revealed that on the day of the shooting, Ball told his girlfriend twice, "If anybody get in my way . . . I'm killing anybody!" It was later determined that the Lancaster County Circuit Court had not in fact issued a warrant for Ball's arrest.

The Richmond Commonwealth Attorney's Office charged Ball in June 2017 in a one-count indictment with capital murder, in violation of Virginia Code § 18.2-31(6)

(2010). Several months thereafter, the Commonwealth Attorney's Office and Ball entered into a plea agreement by which Ball agreed to enter an *Alford* plea — in accordance with *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) — to the single count of capital murder and the parties would recommend to the court a life sentence, "all to be suspended conditioned on the court's imposition of an active sentence of not less than twenty (20) years and not more than sixty (60) years." The Commonwealth also agreed to "withdraw[] its notice of intent to seek the death penalty." Finally, the Commonwealth agreed that "Ball will not be charged at a later date with any additional offenses which might have arisen out of the incident which occurred on May 26, 2017."

The Richmond Circuit Court sentenced Ball to life imprisonment without parole, with all but 36 years suspended.

Ball asserts that following the Richmond Circuit Court's imposition of the 36-year sentence, there were "outcries of the community and law enforcement regarding their feeling that the sentence was inadequate." Indeed, the Assistant U.S. Attorney acknowledged to the district court that he had heard that the Commonwealth Attorneys "were very upset by [the sentence]." But he stated that they never contacted the U.S. Attorney's Office to suggest an additional federal prosecution, although doing so would not have been inappropriate. The district court added, "That happens all the time." The Assistant U.S. Attorney explained that the decision to prosecute Ball was made solely by a panel "of federal prosecutor supervisors" in furtherance of federal interests.

The U.S. Attorney's Office sought and obtained an indictment against Ball in September 2019, charging him with possession of a firearm by a felon, in violation of

4

18 U.S.C. § 922(g)(1), based on Ball's possession of a firearm when he shot and killed Special Agent Walter. The maximum statutory penalty for the violation as charged was 10 years' imprisonment. The Assistant U.S. Attorney later explained to the district court that the government's prosecution was pursued because its interests were "not vindicated in the state."

Ball filed two motions to dismiss the indictment, arguing (1) that the indictment violated his rights under the Fifth Amendment's Double Jeopardy Clause; (2) that the charge should be dismissed under Federal Rule of Criminal Procedure 48(b) for undue delay, and (3) that the federal case against him constituted a vindictive prosecution, in violation of the Fifth Amendment's Due Process Clause, as it was only brought after the state sentence was imposed and solely because the state sentence was perceived to be inadequate.

Following a hearing on Ball's motions, the district court denied them in a Memorandum Opinion and Order dated February 6, 2020. The court explained that Ball's double jeopardy argument was foreclosed (1) by *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019), where the court affirmed that "a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign," and (2) by the test articulated in *Blockburger*, as both the Virginia crime of capital murder and a violation of 18 U.S.C. § 922(g)(1) "'require[] proof of a fact [that] the other does not,'" (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). As to Ball's argument that the prosecution was unduly delayed for purposes of Rule 48, the court explained that "Rule 48(b) 'clearly is limited to post-arrest situations,'" whereas Ball was relying "on alleged

delays that occurred prior to his indictment and arrest on the present federal charge." (Quoting *United States v. Marion*, 404 U.S. 307, 319 (1971)). Finally, as to Ball's vindictive prosecution claim, the court explained that Ball's argument "again belies the fact that two sovereigns may pursue separate prosecutions and vindicate their own interests," relying on *United States v. Jackson*, 327 F.3d 273, 294 (4th Cir. 2003), where the court noted that no presumption of animus arises when federal prosecutors initiate a case after concluding that an earlier state prosecution had not adequately vindicated federal interests.

Following the district court's denial of his motions to dismiss, Ball pleaded guilty without a plea agreement to violating § 922(g)(1).

In the presentence report, the probation officer calculated the offense level for Ball's § 922(g)(1) violation by cross-referencing to U.S.S.G. § 2A1.1 because first-degree murder was involved and thus applying the base offense level of 43 that was provided for there. *See* U.S.S.G. § 2K2.1(c)(1)(B). The probation officer also applied a 6-level enhancement under U.S.S.G. § 3A1.2(b) on the ground that the "offense of conviction was motivated by" the victim's "status" as "a government officer." After applying a 3-level reduction for acceptance of responsibility, the probation officer treated the total offense level of 46 as a level 43, the maximum level addressed by the Guidelines. With a criminal history category of VI, the resulting Guidelines sentence was life imprisonment. That sentence, however, was capped by the statutory maximum sentence of 120 months' imprisonment. *See* U.S.S.G. § 5G1.1(a).

Ball objected to the cross-reference to § 2A1.1 and the 6-level victim-related enhancement under § 3A1.2(b). He also requested a downward variance sentence through application of the factors identified in 18 U.S.C. § 3553(a). The district court overruled Ball's objections and sentenced him to 120 months' imprisonment, to be served *consecutively* to the undischarged portion of Ball's state sentence for capital murder. While the court recognized that it was not following the Guidelines recommendation of a *concurrent* federal sentence, *see* U.S.S.G. § 5G1.3, it explained that such a sentence "would be inadequate to serve the factors set forth" in § 3553(a). The court explained that it had "carefully reviewed [the] defendant's upbringing and family background, which unfortunately involved extensive physical and sexual abuse, . . . poverty, substance abuse[,] and instability," and it had also "read the psychological report prepared by . . . [the] forensic psychologist" who evaluated Ball prior to his state-court sentencing. It noted that while Ball's "upbringing [was] truly regrettable," he had been "afforded the opportunity to participate in rehabilitative programs on a number of occasions" and that "[n]one appeared to have been successful in teaching him to interact with other human beings."

From the district court's judgment dated June 22, 2020, Ball filed this appeal.

II

Ball contends first that his state prosecution for murdering Special Agent Walter and his subsequent federal prosecution for possession of the firearm used in the killing violated his rights under the Fifth Amendment's Double Jeopardy Clause. He argues that the issue of whether he possessed a firearm after having been convicted of a felony was

"necessarily actually determined at the state prosecution, based upon a finding of guilty to the capital murder charge." He thus maintains that his second prosecution is not protected either by the dual-sovereignty doctrine, recently confirmed in *Gamble*, or by the related collateral-estoppel doctrine noted in *Ashe v. Swenson*, 397 U.S. 436 (1970).

The Double Jeopardy Clause provides that no person may be "twice put in jeopardy" "for the *same offence*." U.S. Const. amend. V (emphasis added). The jurisprudence explaining what constitutes the "same offence" applies two distinct concepts. First, under the dual-sovereignty doctrine, the Supreme Court has long held that an offense committed under the laws of a State is *not the same offense* as an offense committed under the laws of the United States, even if the two offenses result from the same conduct and consist of the same elements. *See Gamble*, 139 S. Ct. at 1964 ("We have long held that a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign"). Rather, they are different offenses under the Double Jeopardy Clause because their commission violates the laws of two distinct sovereigns — the State and the United States. Accordingly, "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute," and vice versa. *Id.*

Second, the Court has explained that two offenses are not "the same offence" — regardless of whether they arise under the laws of the same or different sovereigns — when each of the offenses "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

8

Notwithstanding these well-established principles, Ball argues that his federal prosecution amounts to a prosecution for the "same offence" for which Virginia prosecuted him. First, he maintains that the federal prosecution is not protected by the dual-sovereignty doctrine, as it "is the result of the government's quest to obtain additional punishment for [him] through the federal courts because the Government is dissatisfied with the outcome of [his] prosecution in the state court. As such, the Government is in essence relitigating the punishment phase of the state prosecution." This argument, however, is fundamentally flawed because the Supreme Court's formulation of the dual-sovereignty doctrine contains no such motivation-based exception. *See, e.g.*, *Gamble*, 139 S. Ct. at 1964; *Heath v. Alabama*, 474 U.S. 82, 92 (1985) (noting that, if prosecutions are carried out by separate sovereigns, "the circumstances of the case are irrelevant").

Moreover, Ball's double jeopardy argument is foreclosed by *Blockburger*. The Virginia murder statute under which he was convicted — Virginia Code § 18.2-31(6) — punishes the "willful, deliberate, and premeditated killing of a law-enforcement officer," while the federal statute — 18 U.S.C. § 922(g)(1) — makes it unlawful for a convicted felon, knowing his status as such, to knowingly possess a firearm that affected commerce. Thus, the state murder violation requires proof of a killing, whereas the federal firearm violation does not. Conversely, the federal firearm violation requires proof that the defendant was a felon, while the state murder violation does not. Therefore, under the *Blockburger* test, they are not the same offense.

In addition, Ball argues that the federal prosecution violates the collateral-estoppel principle "embodied in" the Double Jeopardy Clause. *Ashe*, 397 U.S. at 445. He states

9

that he "was convicted of the capital murder of Walter by use of *the same firearm* that [was] the subject of this [federal] indictment. In order to have committed the offense, [he] would have had to possess the firearm. . . . Therefore, the issue of whether [he] possessed a firearm after having been convicted of a felony was necessarily actually determined at the state prosecution, based upon a finding of guilty to the capital murder charge." (Emphasis added). This argument, however, fails as well. *Ashe* characterizes collateral estoppel as standing for the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. That formulation of collateral estoppel, however, is inapposite to the instant case. The elements of Ball's § 922(g)(1) conviction — his felon status, possession of a firearm, and knowledge of both — were not "issue[s] of ultimate fact" resolved in the state prosecution. Moreover, the state and federal proceedings did not involve the same parties. Finally, Ball points to no precedent (and we have found none) supporting the proposition that collateral estoppel can be used to circumvent the dual-sovereignty doctrine.

In short, Ball's federal prosecution did not violate his rights under the Double Jeopardy Clause.

III

Ball also contends that because the federal government delayed indicting him for over two years after he possessed the gun he used to kill Special Agent Walter, the district court erred in failing to grant his motion to dismiss the indictment under Federal Rule of

10

Criminal Procedure 48(b). That rule provides that a court "may dismiss an indictment . . . if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b).

Ball's argument, however, fails to take account of the fact that Rule 48(b) is "limited to *post-arrest* situations." *Marion*, 404 U.S. at 319 (emphasis added). As such, the rule does not regulate the time between Ball's firearm possession and the government's obtaining custody of Ball. Yet, Ball seeks to apply Rule 48(b) to precisely that period of time.

The federal government indicted Ball on September 17, 2019, *before* it had even obtained custody of him pursuant to a writ of habeas corpus ad prosequendum, which was issued to state officials on October 9, 2019. Pursuant to that writ, Ball was transferred to the custody of the United States Marshals Service on November 6, 2019, and he made his first appearance in federal court on that date. Ball offers no evidence or argument that there was *any* post-arrest delay, much less "unnecessary delay."

Apart from his Rule 48(b) argument, Ball contends that the district court should have exercised its inherent powers to "dismiss [the] indictment for lack of prosecution," referring to the more than two-year delay between the shooting and the federal government's indictment. Such a dismissal, however, would require the district court to use its supervisory power to "formulate procedural rules not specifically required by the Constitution or the Congress," *United States v. Hasting*, 461 U.S. 499, 505 (1983), a power committed to the court's "broad discretion," *United States v. Goodson*, 204 F.3d 508,

11

514 (4th Cir. 2000). We are unable to find any basis to conclude that the court abused this discretion in the circumstances presented. Indeed, in the ordinary course, the time between when a crime is committed and when a defendant is indicted for that crime is regulated by statutes of limitations, not discretionary judicial power. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977).

IV

Ball's final argument with respect to his conviction is that the district court erred in failing to dismiss his indictment on the ground that the federal government's prosecution of him was vindictive, in violation of the Fifth Amendment's Due Process Clause. He claims that the federal prosecution was launched against him in response to community outcry over the perceived inadequacy of his state sentence and the federal government's corresponding desire to punish him for obtaining that sentence. As he argues:

> [T]he Government exacted a toll upon Ball for successfully negotiating a plea agreement in a different sovereign, which had nothing to do with the Government. . . . Apparently, law enforcement and the community believed that the sentence[] imposed upon Ball was insufficient and too lenient. The Government acknowledged as much at the sentencing hearing.

> [Also,] [t]he Government did not initiate prosecution before the state prosecution even though it could have done so. Rather, the Government waited until after the state made its determination regarding punishment, then, apparently acting upon community sentiment, decided to exact additional punishment from Ball.

To be sure, vindictive prosecution has no place in our system of justice. "[E]xacting a price *for a defendant's exercise of a clearly established right* or . . . punishing the defendant for doing *what the law plainly entitles him to do*" violates the Due Process Clause

12

of the Fifth Amendment. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (emphasis added) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). But vindictive prosecution must not be confused with the government's broad discretion to prosecute *violations of its law*, the exercise of which is "presumptively lawful." *Id.* at 315 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). Context informs the distinction between these two concepts.

When a prosecutor makes *an initial charging decision*, that decision is *presumed* to be a "legitimate response to perceived criminal conduct." *Goodwin*, 457 U.S. at 373; *Armstrong*, 517 U.S. at 464 (noting that a "presumption of regularity supports" federal prosecutors' charging decisions and that "in the absence of clear evidence to the contrary, courts presume that [federal prosecutors] have properly discharged their official duties" (cleaned up)); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (highlighting the "broad" discretion vested in prosecuting attorneys). Accordingly, to establish prosecutorial vindictiveness, the defendant must "carry the heavy burden of proving that [his] prosecution 'could not be justified as a proper exercise of prosecutorial discretion.'" *Wilson*, 262 F.3d at 316 (quoting *Goodwin*, 457 U.S. at 380 n.12). Specifically, he must show that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Id.* at 314 (citing *Goodwin*, 457 U.S. at 380 n.12 (noting that to establish vindictive prosecution, the defendant must show that the charges were brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion")). And if a defendant cannot show vindictiveness through direct evidence, he still may "present evidence of circumstances

13

from which an improper vindictive motive may be presumed." *Id.* Such evidence, however, "must show that the circumstances pose a realistic likelihood of vindictiveness," *id.* (cleaned up), and that the "circumstances warrant it for all cases of the type presented," *id.* at 315.

On the other hand, when a prosecutor seeks more severe penalties *on retrials obtained by a defendant*, the prosecutor's decision is *presumed* to be vindictive, on the theory that it is more likely to be an impermissible response to the defendant's obtaining a new trial — as is his legal right — as distinct from a legitimate response to criminal conduct. *See Blackledge v. Perry*, 417 U.S. 21, 28–29 (1974) (holding that it was not constitutional for a prosecutor "to respond to [a defendant's] invocation of his statutory right to appeal by bringing a more serious charge against him"); *Goodwin*, 457 U.S. at 376 ("The Court emphasized in *Blackledge* that it did not matter that no evidence was present that the prosecutor had acted in bad faith or with malice in seeking the felony indictment. [Rather], the Court held that the likelihood of vindictiveness justified a presumption that would free defendants of apprehension of such a retaliatory motivation on the part of the prosecutor").

In the context where a defendant is prosecuted by two distinct sovereigns in relation to the same incident — such as when a federal prosecutor initiates a criminal prosecution after a state prosecution — each prosecution is the result of a distinct sovereign's *initial charging decision*. And because the federal prosecution is not a retrial, but rather the federal government's first and only action to redress a perceived violation of federal

14

criminal law, it is, under the principles noted above, entitled to the presumption of legitimacy.

In this case, Ball seeks to show vindictive prosecution in precisely this distinct-sovereign context. And to do so, he points only to (1) the timing of the federal prosecution, which was initiated after completion of his state prosecution, and (2) the community outcry over what was perceived as an inadequate state sentence. Neither fact nor both facts combined, however, satisfy his burden. Indeed, both are consistent with a proper exercise of prosecutorial discretion based on the federal prosecutor's conclusion that the state prosecution *inadequately vindicated federal interests*.

In *United States v. Jackson*, 327 F.3d 273 (4th Cir. 2003), we faced circumstances similar to those here. In *Jackson*, the defendant confessed to state law enforcement officers to the murder of a recent college graduate who was hiking in the Pisgah National Forest, and the State charged and convicted the defendant for first-degree murder, imposing the death penalty. *Id.* at 279–80. After the defendant was able to suppress his confession on appeal, he negotiated with the state prosecutors a guilty plea to second-degree murder, for which he received a sentence of over 31 years' imprisonment. *Id.* at 280–81. After that sentence was imposed, federal prosecutors charged the defendant with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j)(1), and sought the death penalty. *Id.* at 281. The federal jury convicted the defendant, and the death penalty was imposed. *Id.* On appeal, the defendant contended, among other things, that his federal prosecution was vindictive, pointing mainly to the delay of the federal government's decision to prosecute him and its failure to follow its own *Petite* policy, *id*.

15

at 294–95, a set of internal guidelines intended to inform "whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding," Justice Manual § 9–2.031, *Dual and Successive Prosecution Policy* ("*Petite* policy"). We rejected the defendant's argument, reasoning that the federal government's delay was appropriately based on (1) "its decision to defer to State authorities and to see whether federal interests would be vindicated" and (2) its subsequent determination that federal interests had not in fact been vindicated by the state proceedings. *Jackson*, 327 F.3d at 294.

The case before us is hardly distinct. The federal government has articulated valid federal interests in prosecuting Ball for his violation of federal law, pointing to its prioritization of felon-in-possession cases, as well as the serious nature of Ball's conduct in murdering a law-enforcement officer. As the government articulates its interests:

> As a convicted felon with a significant criminal record, including his repeated violent assaults, Ball is precisely the type of defendant that the United States Attorney's Office in Richmond has long sought to prosecute for illegally possessing firearms. Such firearm prosecutions have also remained a top priority for the current United States Attorney for the Eastern District of Virginia and the Department of Justice as a whole.

> Most importantly, the United States has a clear federal interest in prosecuting Ball based on [the] seriousness of his conduct, which included the use of his illegally possessed firearm to murder Special Agent Walter. Defendants who are willing to murder police officers demonstrate a heightened threat to civil society. Such defendants proclaim themselves above the law in every sense possible. Ball's brazen and violent attack on a law enforcement officer justifies the Department of Justice's discretion to prosecute him and vindicate significant federal interests.

Because Ball failed to present evidence sufficient to rebut the presumption that his federal prosecution was legitimate, we reject his claim that the prosecution was vindictive.

16

V

Ball also mounts several challenges to his sentence.  We find that none, however, merits extensive discussion, and we dispose of each as follows.

A

First, Ball contends that the district court erred in calculating the Guidelines range for his gun-possession offense by cross-referencing to U.S.S.G. § 2A1.1, which imposes an offense level of 43 for first-degree murder, i.e., premeditated killing.  *See* U.S.S.G. § 2A1.1 cmt. n.1 ("This guideline applies in cases of premeditated killing").  He argues as a factual matter that the cross-reference should instead have been to manslaughter under either § 2A1.3 or § 2A1.4 because he killed Special Agent Walter in the "heat of passion" as he was resisting arrest.

The district court concluded otherwise, finding that the first-degree murder cross-reference to § 2A1.1 was justified.  It relied on, among other things, (1) Ball's *Alford* plea in state court to the "willful, deliberate, and premeditated killing of a law enforcement officer"; (2) his communications with his girlfriend on the day before and the day of his shooting of Special Agent Walter; and (3) his conduct in shooting Special Agent Walter "point-blank" in the center of the forehead.

We conclude that these facts allowed the court to make the finding that the killing was premeditated, as premeditation exists when a person has a "fully formed conscious purpose to kill," even for "a moment." *United States v. Tillery*, 823 F. App'x 157, 161 (4th Cir. 2020) (per curiam) (unpublished) (cleaned up).  In other words, the mental state

required for premeditation "must exist only for such time as will allow the accused to be conscious of the nature of the act he [was] about to commit and the probable result of that act." *Id*. (cleaned up). Accordingly, the district court did not clearly err in finding premeditation and therefore applying the first-degree murder cross-reference.

B

Ball also contends that the district court clearly erred in applying a 6-level enhancement under U.S.S.G. § 3A1.2. Under that provision, a 6-level enhancement can be triggered through two subsections relevant here — § 3A1.2(b) and § 3A1.2(c)(1). Section 3A1.2(b) applies if (1) the defendant's victim was a government officer; (2) "the offense of conviction was motivated by such status"; and (3) the applicable Chapter Two guideline is for an offense against the person, including homicide. U.S.S.G. § 3A1.2(b). And § 3A1.2(c)(1) applies if the defendant "in a manner creating a substantial risk of serious bodily injury . . . [and] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense." U.S.S.G. § 3A1.2(c)(1). The district court found that both provisions were satisfied, relying on (1) Ball's acknowledgment during his state plea hearing that he had reason to believe that Special Agent Walter was a law enforcement officer; (2) Ball's *Alford* plea for violation of Virginia Code § 18.2-31(6), which included the premeditated killing of Special Agent Walter "for the purpose of interfering with the performance of his official duties"; (3) the bodycam video of Ball's arrest showing that Walter identified himself to Ball; and

(4) Ball's communications with his girlfriend, which the court characterized as expressing his intent to "kill any police officer attempting to take him into custody."

We conclude that the district court did not clearly err in applying the 6-level enhancement. Moreover, because Ball challenges only the district court's 6-level enhancement under U.S.S.G. § 3A1.2(b) — not its alternative reliance on § 3A1.2(c)(1), which also justifies the enhancement — he forfeits any challenge to the district court's reliance on § 3A1.2(c)(1), rendering any error under § 3A1.2(b) harmless. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (stating this Court has "a well settled rule that contentions not raised in the argument section of the opening brief are abandoned") (citing *Edwards v. City of Goldsboro*, 178 F.3d 232, 241 n.6 (4th Cir. 1999)).

C

Finally, Ball argues that the 10-year sentence was longer than what he would have received for an analogous state offense and therefore was substantively unreasonable. Specifically, he argues that had he been

> convicted of the same offense in state court, the penalty would [have] amount[ed] to a two or three year sentence. Merely[] because the case was prosecuted in federal court does not change the nature of the charge, that Ball possessed a firearm after having been convicted of a felony. Therefore, a sentence of ten years, rather than three, constitutes a sentence longer than necessary to achieve the goals of 18 U.S.C. § 3553, in violation of Ball's right to due process.

We review the substantive reasonableness of district court sentencing decisions "for abuse of discretion only." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49–51 (2007)). And under this deferential

standard, the mere fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Ball fails to establish that his sentence was substantively unreasonable. Specifically, his references to state law are unavailing. After all, federal courts are to impose sentences under federal law — not state law — and the federal standard requires that they be "sufficient, but not greater than necessary, to comply with the purposes [of the federal sentencing regime]." 18 U.S.C. § 3553(a). While it is true that 18 U.S.C. § 3553(a)(6) speaks of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," sentence disparities between state and federal defendants are not the disparities that § 3553(a)(6) aims to address. *See United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006) ("[T]he sole concern of § 3553(a)(6) is with sentencing disparities *among federal defendants*" (emphasis altered)).

Accordingly, we reject Ball's challenges to the federal sentence imposed by the district court.

\*    \*    \*

For the reasons given, we affirm the judgment of the district court.

AFFIRMED