**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4707

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KACEY HICKS, a/k/a Casey Hicks,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:18-cr-00279-BO-1)

Argued:  September 16, 2022                          Decided:  April 5, 2023

Before KING, RUSHING, and HEYTENS, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge King and Judge Heytens joined.

**ARGUED:** Geoffrey Ryan Willis, DYSART WILLIS, Raleigh, North Carolina, for Appellant.  Daniel Bubar, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Laura S. Howard, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

RUSHING, Circuit Judge:

A jury convicted Kacey Hicks of possessing a firearm and ammunition as a felon, possessing cocaine and marijuana with intent to distribute, and maintaining a place for the purpose of distributing, manufacturing, or using cocaine and marijuana. On appeal, Hicks challenges his convictions on numerous grounds. We affirm.

## I.

A confidential informant tipped off law enforcement that Hicks was dealing drugs out of his residence in Henderson, North Carolina. In the span of a week, officers used the informant to make two controlled purchases of crack cocaine from Hicks at his residence. Officers presented the informant with a photo of Hicks following the buys, and the informant confirmed Hicks sold him the crack cocaine. Law enforcement used the two controlled buys, the positive identification, and other information from the informant to obtain a warrant to search Hicks's residence. When officers executed the warrant, they found marijuana, cocaine, cash, and drug paraphernalia such as digital scales, packaging, and inositol powder (a cutting agent). Officers also found a firearm and ammunition in the residence and two firearms and two spent shell casings in a BMW parked on the property.

A federal grand jury charged Hicks with possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute a quantity of cocaine and marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession of a firearm in furtherance of a drug-trafficking crime and aiding and abetting in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(i), and maintaining a place

2

for the purpose of manufacturing, distributing, or using marijuana and cocaine in violation of 21 U.S.C. § 856(a)(1).

Hicks moved to suppress the evidence from the search, arguing the informant's identification of Hicks from a single photo tainted the search warrant. After a hearing, the district court denied the motion to suppress, concluding that probable cause supported the search warrant even without the identification.

Hicks pleaded not guilty and proceeded to trial. The jury convicted Hicks on all counts except the third, acquitting him of possession of a firearm in furtherance of a drug-trafficking crime. The district court sentenced Hicks to concurrent sentences of 108 months' imprisonment on each count.

II.

We calendared this case for oral argument primarily to consider Hicks's challenge to his conviction for maintaining a place for the purpose of manufacturing, distributing, or using a controlled substance, so we address that assignment of error first. Hicks moved for judgment of acquittal at the close of the Government's case-in-chief and again after the close of evidence. *See* Fed. R. Crim. P. 29(a). We therefore review the sufficiency of the evidence de novo. *See United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020); *United States v. Taylor*, 784 Fed. App. 145, 152–153 (4th Cir. 2019). In so doing, we "consider the evidence viewed in the light most favorable to the government and determine whether any rational jury could have found each essential element of the crime charged beyond a reasonable doubt." *United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir. 1997); *see Fall*, 955 F.3d at 375. We "consider circumstantial as well as direct evidence, and allow the

3

government the benefit of all reasonable inferences from the facts proven to those sought to be established, and we assume that the jury resolved all contradictions in testimony in favor of the Government." *United States v. Savage*, 885 F.3d 212, 219–220 (4th Cir. 2018) (internal quotation marks omitted); *see Fall*, 955 F.3d at 375. Hicks also challenges the sufficiency of the evidence on his other counts of conviction, so we consider each of the three counts in turn.

## A.

To convict Hicks of violating 21 U.S.C. § 856(a)(1), the Government had to prove beyond a reasonable doubt that Hicks (1) knowingly (2) opened, leased, rented, used, or maintained any place, permanently or temporarily, (3) for the purpose of manufacturing, distributing, or using any controlled substance. 21 U.S.C. § 856(a)(1); *see United States v. Goff*, 404 Fed. App. 768, 770 (4th Cir. 2010); *United States v. Locklear*, 41 F.3d 1504 (Table), 1994 WL 642196, at \*2 (4th Cir. 1994).

On appeal, the parties dispute the meaning of the phrase "for the purpose of" in Section 856(a)(1). We agree with the consensus of the courts of appeals that a defendant's drug-related purpose need not be his sole purpose for maintaining the property. *See United States v. Shetler*, 665 F.3d 1150, 1161 (9th Cir. 2011); *United States v. Russell*, 595 F.3d 633, 642–643 (6th Cir. 2010); *United States v. Verners*, 53 F.3d 291, 296 (10th Cir. 1995); *United States v. Roberts*, 913 F.2d 211, 220 (5th Cir. 1990); *see also United States v. Stallworth*, 466 Fed. App. 218, 222–223 (4th Cir. 2012) ("The case law . . . unanimously construes § 856(a)(1) as not requiring that a residence be maintained *exclusively* for the distribution of drugs."). Nevertheless, it must be one of the defendant's specific purposes

4

for maintaining the property and not merely incidental to some other purpose.  *See United States v. Lancaster*, 968 F.2d 1250, 1253 (D.C. Cir. 1992); *Werth v. United States*, 493 Fed. App. 361, 368 (4th Cir. 2012); *Stallworth*, 466 Fed. App. at 223.  For instance, "[e]ach court to have addressed this issue has agreed that" Section 856(a)(1) does not criminalize a person's casual drug use at home because such personal consumption is "'merely incidental'" to his residential purpose for the home.  *Russell*, 595 F.3d at 642–643 (quoting *Lancaster*, 968 F.2d at 1253); *see Shetler*, 665 F.3d at 1161; *Verners*, 53 F.3d at 296.

Some of our sister circuits require the Government to prove that the manufacture, distribution, or use of controlled substances was "one of the primary or principal uses" of the property, at least when the statute is applied "in the residential context."  *Verners*, 53 F.3d at 296; *see Shetler*, 665 F.3d at 1162.  Other circuits require the defendant's drug-related purpose to be a "significant or important" purpose for maintaining the property.  *Russell*, 595 F.3d at 643; *see United States v. Soto-Silva*, 129 F.3d 340, 346–347, 346 n.4 (5th Cir. 1997).

We need not decide on these facts whether there is a meaningful difference between these various formulations because, under any of these standards, the Government presented sufficient evidence to convict Hicks of maintaining a place for the purpose of distributing marijuana and cocaine.  Hicks does not contest that he lived at and maintained the residence.  When officers searched Hicks's residence, they found distribution amounts of both marijuana and cocaine.  Hicks admitted to officers during the search that the marijuana was his, and a photo on his cell phone, dated four days before the search, showed

5

one of the bags of marijuana officers found at the residence.[1]  Officers testified at trial that some of the marijuana was packaged into 20 plastic bags with the corners snipped off, typical of packaging for sale.  As for the cocaine, officers found $410 cash and bags containing more than 33 grams of cocaine in a basket in the main bedroom of the residence.[2]  In one kitchen cabinet, officers found three bottles of inositol powder (a cutting agent), two digital scales, binoculars, and materials to package the drugs for sale.  Officers found firearms and ammunition in the residence and the BMW parked outside.  The jury also heard that the confidential informant twice purchased crack cocaine from Hicks at the residence and informed officers of significant foot traffic going to and from the house.

Although evidence suggested Hicks had multiple purposes for the residence—such as living there, operating a barber shop out of the kitchen, and drug dealing—that does not undercut the sufficiency of this evidence to prove that drug distribution was one specific purpose for which Hicks maintained the residence.  *See, e.g., United States v. Ducheneaux*, No. 21-1349, 2021 WL 5895279, at *2–3 (8th Cir. Dec. 14, 2021) (purposes of the premises were residence, working ranch, and drug distribution).  Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Government, the district court did not err in denying Hicks's motion for acquittal on the Section 856(a)(1) count.  *See, e.g., United States v. Rhodes*, 730 F.3d 727, 730 (8th Cir. 2013) (affirming

---

[1] Hicks disputes whether evidence showed that the cell phone belonged to him.  But the phone contained "selfie" photographs of Hicks, supporting a reasonable inference that it was his.

[2] An officer testified at trial that less than one gram of cocaine is a user amount.

conviction based on drugs packaged for sale, distribution paraphernalia, and loaded pistol found in defendant's area of the house); *Locklear*, 1994 WL 642196, at *2 (sustaining conviction based on "the large quantity of drugs, drug paraphernalia, and weapons found throughout the house").

Hicks also argues the district court should have instructed the jury that the purpose element in Section 856(a)(1) requires finding that drug manufacture, distribution, or use was a "specific, non-collateral purpose" for the residence. Opening Br. 44. Hicks did not raise this objection to the jury instructions at trial, so we consider it under the plain error standard. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013). The district court accurately instructed the jury on the elements of the offense, and its decision not to say more concerning the purpose element was not plain error. *See Roberts*, 913 F.2d at 220.

B.

In view of the evidence previously described, the district court also did not err by denying Hicks's motion for acquittal on the charge of possession with intent to distribute. To prove Hicks possessed marijuana or cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), the Government had to prove beyond a reasonable doubt the "(1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute." *United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005). A jury can infer a defendant's intent to distribute from factors such as "(1) the quantity of the drugs; (2) the packaging; (3) where the drugs are hidden; and (4) the amount of cash seized with the drugs." *Id*. As previously explained, the jury heard that officers searching Hicks's

7

residence found distribution quantities of both marijuana and cocaine, hundreds of dollars in cash, and materials to apportion and package the drugs for sale.  On appeal, Hicks does not contest that the marijuana was his.  And although he argues the cocaine could have belonged to his brother or infirm mother who were also in the home during the search, the jury had ample evidence from which to conclude that the cocaine belonged to Hicks.

## C.

As for the felon-in-possession count, the district court again did not err.  To prove Hicks possessed a firearm or ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1), the Government had to prove beyond a reasonable doubt that (1) Hicks was a convicted felon, (2) Hicks knew he was a felon, (3) Hicks knowingly possessed a firearm or ammunition, and (4) the firearm or ammunition had traveled in interstate or foreign commerce.  *See Rehaif v. United States*, 139 S. Ct. 2191, 2195–2196, 2200 (2019); *United States v. Ball*, 18 F.4th 445, 453 (4th Cir. 2021); *cf. United States v. Royal*, 731 F.3d 333, 337 (4th Cir. 2013).

On appeal, Hicks contests only the possession element.  Knowing possession of a firearm or ammunition can be actual or constructive.  "'A person may have constructive possession of contraband if he has ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed,' and the government must provide proof that 'defendant had knowledge of the presence of the contraband.'"  *United States v. Smith*, 21 F.4th 122, 140 (4th Cir. 2021) (quoting *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010)).  Contraband found in a defendant's residence "permits an

8

inference of constructive possession." *United States v. Shorter*, 328 F.3d 167, 172 (4th Cir. 2003).

Overwhelming evidence supported the jury's finding that Hicks knowingly possessed a firearm and ammunition. When the officers searched Hicks's residence, they found Hicks under a bed with his hand wedged between the mattress and box spring, one foot away from a handgun hidden there. Officers found loose ammunition and boxes of ammunition in the residence. A photo on Hicks's cell phone showed one of the same boxes of ammunition in the house. In the BMW parked outside, officers found two spent shell casings in the car's cabin and two firearms hidden in a compartment in the trunk. One of the shell casings was the same caliber and was made by the same manufacturer as one of the boxes of ammunition in the house. And one of the firearms in the BMW's trunk required the same caliber ammunition. Hicks admitted to officers during the search that he had driven the BMW before, officers found a utility bill in Hicks's name in the BMW, and Hicks's cell phone contained photos of the BMW. Based on this evidence, the district court correctly denied Hicks's motion for acquittal on the felon-in-possession count.

## III.

After thorough consideration, we do not find any of Hicks's remaining arguments meritorious. Specifically, Hicks contests the district court's denial of his motion to suppress, disputes several of the district court's evidentiary rulings, and challenges two additional jury instructions. We briefly address each argument.

A.

First, Hicks argues that the search warrant was not supported by probable cause and that certain evidence exceeded the warrant's scope. We review a district court's legal determinations in ruling on a suppression motion de novo and factual findings for clear error. *See United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). But we review arguments the defendant failed to raise in his suppression motion or hearing only for plain error. *United States v. Ojedokun*, 16 F.4th 1091, 1113 (4th Cir. 2021); *see Olano*, 507 U.S. at 732.

"The Fourth Amendment generally requires the police to obtain a warrant before conducting a search." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). When a magistrate is presented with a warrant application, the magistrate must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted); *see United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). We review to ensure the magistrate had a substantial basis to determine probable cause existed. *See Gates*, 462 U.S. at 238–239; *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). In doing so, we consider the totality of the circumstances, affording "great deference to the magistrate's assessment of the facts presented to him." *Blackwood*, 913 F.2d at 142 (internal quotation marks omitted).

10

The warrant application contained sufficient information for the magistrate to find probable cause to issue a warrant. *See United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) ("[W]e consider only the facts presented in the warrant application."). The application described how officers received a tip from an informant that Hicks was selling crack cocaine from his residence and that the informant knew of foot and vehicle traffic going to and from the residence. It stated that the informant had provided reliable information in the past that led to the arrest of other individuals involved in the sale of illegal drugs. And it described the informant's two controlled purchases of crack cocaine from Hicks and the procedures officers followed to execute those purchases. Taken together, this information presented "a fair probability" that officers would find "contraband or evidence of a crime" at Hicks's residence. *Gates*, 462 U.S. at 238; *see, e.g., United States v. Clyburn*, 24 F.3d 613, 617–618 (4th Cir. 1994). The district court correctly determined that, even disregarding the informant's identification of Hicks from the single-photo show-up, probable cause supported the search warrant.

Hicks faults the lead investigating officer for not conducting a more thorough investigation before applying for a warrant. Although the officer confirmed the informant's statement that Hicks lived in a blue duplex and confirmed that Hicks's driver's license was registered to that address, the officer did not confirm the house was, in fact, frequented by vehicle and foot traffic. But the officer conducted two controlled drug purchases from Hicks at the house using a known, reliable informant. The officer was not required to confirm every detail supplied by that informant before applying for a warrant. *See United States v. Gondres-Medrano*, 3 F.4th 708, 715–716 (4th Cir. 2021). Hicks

11

further faults the investigating officer for not recording the controlled buys. But "neither we nor the Supreme Court have ever held that the existence or non-existence of audio or video recordings is necessarily decisive to a probable-cause determination," *United States v. Hall*, No. 20-4618, 2021 WL 5754904, at *5 (4th Cir. Dec. 3, 2021), an inquiry not susceptible to "a list of inflexible, independent requirements" officers must follow "in every case," *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks omitted). Officers searched the informant for contraband before the buys, provided cash to the informant to make the purchases, watched the informant walk to Hicks's residence, and met the informant at a predetermined location afterward. These procedures sufficed to ensure the reliability of the controlled buys.

Similarly, contrary to Hicks's argument, probable cause did not require the officers to test the crack cocaine after the buys to confirm its illicit nature. In the warrant application, the lead officer stated that he had eight years of law enforcement experience, was assigned to investigate "the possession and sale of illegal controlled substances," and had received training about controlled substances. J.A. 34. The magistrate could reasonably conclude the officer visually identified the substance the informant purchased from Hicks as crack cocaine, even though the warrant application did not say whether the officer tested it.

Hicks also suggests the warrant application was misleading for two reasons. First, it stated the informant had previously provided information leading to the arrest of "individuals," J.A. 35, but at the suppression hearing the officer could not recall whether the informant had conducted more than one prior controlled purchase. Second, it

12

incorrectly reported that Hicks drove a Mercedes.  In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court "developed a two-prong test clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant." *Lull*, 824 F.3d at 113–114.  Hicks did not make any *Franks* arguments to the district court, and we discern no plain error.  *See United States v. Moody*, 931 F.3d 366, 372 (4th Cir. 2019).  Specifically, Hicks has failed to "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–156.

Finally, Hicks argues the district court plainly erred by failing to suppress a cell phone and evidence seized from the BMW because they were outside the search warrant's scope.  Law enforcement officers must execute search warrants according to "the terms of the warrant's authorization." *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009). We ask whether the officers had an objectively reasonable belief that the area searched fell within the scope of the warrant.  *See Maryland v. Garrison*, 480 U.S. 79, 88 (1987); *United States v. Kimble*, 855 F.3d 604, 611–612 (4th Cir. 2017).  "Where a warrant authorizes the search of an entire property or premises, the scope of the warrant includes automobiles on the property or premises that are owned by or are under the dominion or control of the premises owner or which reasonably appear to be so controlled." *United States v. Patterson*, 278 F.3d 315, 318 (4th Cir. 2002).

Here, there was no plain error.  The warrant authorized law enforcement to search the duplex and a silver Mercedes.  It also authorized officers to seize "Vehicles" and "all

13

electronics." J.A. 34. The BMW was parked outside the duplex, and Hicks admitted to officers during the search that he had driven the BMW before, indicating he had some control over it. Officers therefore had an objectively reasonable belief that both the BMW and the cell phone fell within the warrant's scope.

### B.

Moving to the district court's evidentiary rulings, Hicks challenges the admission of evidence about the informant's tip, the controlled purchases, and images from the seized cell phone. We review Hicks's Confrontation Clause challenge to the admission of evidence about the informant's tip de novo, *see United States v. Mathis*, 932 F.3d 242, 255 (4th Cir. 2019), and conclude that any error was harmless, *see Delaware v. Van Arsdall*, 475 U.S. 673, 680–684 (1986); *United States v. Mouzone*, 687 F.3d 207, 213 (4th Cir. 2012). We review Hicks's other evidentiary challenges, which are based on Federal Rules of Evidence 401 and 403, for abuse of discretion and find no reversible error. *See United States v. Peterson*, 945 F.3d 144, 156–157 (4th Cir. 2019).

### C.

Lastly, we consider Hicks's two remaining challenges to the district court's jury instructions. We review the district court's decision to give or deny a proposed jury instruction for abuse of discretion. *See United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009). First, Hicks argues the district court improperly denied his request for a simple possession instruction. Because of the voluminous evidence of drug distribution and the sparse evidence of personal use, the district court did not abuse its discretion by declining to give a simple possession instruction. *See Smith*, 21 F.4th at 133–139. Second, Hicks

argues the district court plainly erred by omitting the *Government's* proposed instruction defining "knowingly." Reviewing the district court's jury instructions "as a whole," we find no plain error. *Passaro*, 577 F.3d at 221 (internal quotation marks omitted). The district court's instructions were "not misleading and contained an adequate statement of the law." *United States v. Scott*, 424 F.3d 431, 434 (4th Cir. 2005).

## IV.

For these reasons, the judgment of the district court is

*AFFIRMED*.

15